**Ex parte Lonnie Earle FITE, Appellant.**

**No. 3–90–185–CR.**

Court of Appeals of Texas, Austin.

Aug. 14, 1991.

Terrence W. Kirk, Austin, for appellant.

Ronald Earle, Dist. Atty., Terrence Keel, Asst. Dist. Atty., Austin, for appellee.

Before CARROLL, C.J., and JONES and SMITH, JJ.

JONES, Justice.

This is an appeal from a denial of habeas corpus relief. The applicant, Lonnie Earle Fite, was acquitted of the murder of Robert Walker. The State then obtained an indictment against Fite for "engaging in organized criminal activity": conspiring to commit the offense of aggravated kidnapping of Walker. Tex.Penal Code Ann. § 71.02(a)(1) (Supp.1991). Before trial on the kidnapping charge, Fite sought habeas corpus relief, asserting that the kidnapping indictment placed him in double jeopardy in violation of the fifth and fourteenth amendments to the United States Constitution. The trial court denied the relief. We will affirm.

On February 8, 1990, the Travis County grand jury indicted Fite for murder, charging that he "intentionally and knowingly cause[d] the death of an individual, Robert Walker, by shooting him with a deadly weapon, to wit: a firearm." During the jury trial that followed, the State presented evidence that Kathy Otis and her common-law husband, Harley Duncan, both friends of Fite's, planned to kidnap and injure or kill Walker because Walker had "slept with" Otis. Fite's role in this transaction is not entirely clear, but there was evidence that Fite gave Duncan a gun; that Duncan and Otis tricked Walker into riding in their car with them; that during this ride Duncan shot Walker in the head, but that Walk-er was still alive; that Duncan and Otis took Walker to a location near Fite's residence, where they met Fite; that Fite then shot Walker a second time; and that Fite then ordered Duncan to bury Walker's body with Fite's bulldozer, which Duncan did. The defense presented evidence that Walker would have died from the first gunshot wound within as few as three minutes. The jury acquitted Fite of Walker's murder.

About two weeks later Fite was indicted for engaging in organized criminal activity. The indictment contained two counts, the first charging that Fite conspired to commit Walker's murder and the second charging that Fite conspired to commit aggravated kidnapping. The kidnapping count contained three paragraphs alleging different overt acts committed by Fite in pursuance of the agreement. Paragraph I alleged that Fite and Duncan "shot Robert Walker with a firearm"; paragraph two alleged that Fite "furnished ... Duncan a firearm, and the said ... Duncan ... shot Robert Walker"; paragraph three alleged that Fite "directed the burial of Robert Walker."

Following a hearing on Fite's application for writ of habeas corpus, the trial court granted relief as to Count I (conspiracy to commit murder), but denied relief as to Count II (conspiracy to commit aggravated kidnapping). The State then announced in open court that it was abandoning the paragraph of Count II that charged that the overt act performed by Fite in pursuance of the kidnapping agreement was that he "shot Robert Walker with a firearm". The trial court incorporated the State's announcement into its written order.

The starting point in double jeopardy analysis is *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In *Blockburger* the United States Supreme Court established the rule that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. at 182.

In the present case, Fite concedes that under the *Blockburger* test there is no bar to his prosecution for conspiring to kidnap Walker after having been acquitted of his murder.

Fite contends, however, that even though *Blockburger* does not bar the second prosecution, the recent Supreme Court decision in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), does. In *Grady* the defendant, after causing an automobile collision in which the driver of the other car was killed, pleaded guilty to the offenses of driving while intoxicated and failing to keep right of the median. A grand jury then indicted him for various counts of vehicular manslaughter and assault; a bill of particulars filed by the prosecution identified three acts on which it would rely to prove the homicide and assault charges: "(1) operating a motor vehicle on a public highway in an intoxicated condition, (2) failing to keep right of the median, and (3) driving approximately 45 to 50 miles per hour in heavy rain...." The Supreme Court held the subsequent prosecution barred even though it did not violate the *Blockburger* test:

> [A] subsequent prosecution must do more than merely survive the *Blockburger* test.... [T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

495 U.S. at ——, 110 S.Ct. at 2093, 109 L.Ed.2d at 564. The Court held that "[t]he critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct." *Id.*

In *Grady* the "lesser" offense was prosecuted first, and the "greater" offense was prosecuted later. However, the Court made it clear that the order in which the offenses are prosecuted does not alter the application of the Double Jeopardy Clause: "[I]f in the course of securing a conviction for one offense the State necessarily has proved the conduct comprising all of the elements of another offense not yet prosecuted (a 'component offense'), the Double Jeopardy Clause would bar subsequent prosecution of the component offense." 495 U.S. at —— n. 11, 110 S.Ct. at 2093 n. 11, 109 L.Ed.2d at 564 n. 11; *see also Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *Brown v. Ohio*, 432 U.S. 161, 168, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977).

The Texas Court of Criminal Appeals recently addressed the proper application of *Grady* in *Ex parte Ramos*, 806 S.W.2d 845 (Tex.Cr.App.1991). In *Ramos*, the defendant was first prosecuted for burglary of a habitation with intent to commit sexual assault; he was then indicted and prosecuted for the sexual assault committed during the same criminal transaction. The court held that *Grady* requires the following analysis:

> [W]e must first apply the *Blockburger* test to see if the statutory elements in the abstract are the same. If they are, then the second prosecution is barred; but, if they are not, we must go one step further and look at the elements in fact. This means that we must look at the underlying conduct in question to determine whether: (1) this is conduct constituting an offense (hence, "criminal conduct"); (2) the defendant has already been prosecuted for this offense; and (3) this "criminal conduct" will be used to establish an *essential element* of the offense charged at the subsequent prosecution. Only if the conduct meets all three parts of this test will the latter prosecution be barred by double jeopardy.

*Ramos*, 806 S.W.2d at 847 (emphasis in original).

The gist of Fite's argument in the present case is this:

• The performance of an overt act in furtherance of the agreement is an essential element of the offense of engaging in organized criminal activity. *Barber v. State*, 764 S.W.2d 232, 235 (Tex.Cr.App. 1988); Tex.Penal Code Ann. §§ 71.01, 71.02 (Supp.1991).

• The "organized criminal activity" indictment alleges that Fite performed two overt acts in furtherance of a conspiracy to

commit the offense of aggravated kidnapping of Robert Walker:

(i) furnished Duncan a gun, with which Duncan shot Walker; and

(ii) directed Walker's burial.

• Those same two acts were proven in the murder prosecution, according to Fite, in order to prove the "intent" element of murder.

• Therefore, double jeopardy prohibits the State from offering proof of those same acts to establish an essential element of the offense of engaging in organized criminal activity.

We reject Fite's argument. First, the two overt acts (i.e., the "conduct") that the State will prove in the "organized criminal activity" prosecution do not constitute offenses for which Fite has already been tried. *See Ramos*, 806 S.W.2d at 848. As mentioned above, Fite was initially prosecuted for "intentionally and knowingly caus[ing] the death of an individual, Robert Walker, by shooting him with … a firearm." In that prosecution Fite was not charged as a party to Duncan's shooting of Walker; he was charged with shooting Walker himself. The overt acts charged in the subsequent indictment, on the other hand, are that Fite furnished a firearm to Duncan and directed Walker's burial. Even if those are criminal acts, they are not criminal acts for which Fite has already been prosecuted.

Second, in Fite's murder prosecution, it was not *necessary* for the State to prove "all of the elements of" the offense of engaging in organized criminal activity (i.e., conspiracy to commit kidnapping). *See Grady*, 495 U.S. at —— n. 11, 110 S.Ct. at 2093 n. 11, 109 L.Ed.2d at 564 n. 11. There was no need for the State to prove that Fite furnished a gun to Duncan, nor was there any need for the State to prove that Fite directed Walker's burial. Moreover, to the extent that the State presented proof of those acts to show an intent to murder, the acts were merely the *evidence* of the conduct, not the conduct itself. The *conduct* to be proven in the murder prose-

cution was that Fite shot Walker intending to kill him or knowing that he would kill him. The "critical inquiry," of course, is the conduct the State will prove, not the evidence the State will use to prove it. *Grady*, 495 U.S. at ——, 110 S.Ct. at 2093, 109 L.Ed.2d at 564; *Ramos*, 806 S.W.2d at 847. We conclude that the prosecution of Fite for engaging in organized criminal activity is not barred under the test enunciated in *Grady*.

The trial court's order denying relief is affirmed.