TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-95-00507-CR





Charles Carlson, Appellant


v.


The State of Texas, Appellee





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT

NO. 0953380, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING





 This case is a companion to another decided this date, Reina v. State, No. 03-95-514-CR (Tex. App.-Austin Feb. 27, 1997), and involves appellant Carlson's challenge to his convictions
for attempted murder and engaging in organized criminal activity. In four points of error, Carlson
contends the evidence is legally insufficient to support the verdict, the trial court improperly charged
the jury, and the trial court erred in failing to sever Carlson's trial from his co-defendant's. Because
we find Carlson's challenges to be without merit, we will affirm the judgment of conviction against
him.


BACKGROUND

 On the night of January 10, 1995, Ricardo Davila, a homeless person, was severely
beaten and set afire. The police arrested Carlson, John Reina, and Mike Brown in connection with
the offense. Reina and Carlson were indicted for engaging in organized criminal activity, attempted
murder, and aggravated assault. See Tex. Penal Code Ann. §§ 15.01, 19.02, 22.02, & 71.02 (West
1994 & Supp. 1997). The following facts were revealed at their joint trial.

 Sometime during the evening the offense took place, Reina drove Carlson and Brown
to a convenience store. Carlson and Brown encountered Davila and, for reasons not revealed in the
record, got into an argument. Davila, Carlson, and Brown ended up in an alley behind the store in
a physical confrontation. Carlson and Brown used their feet to kick and stomp on Davila. They
threw bottles and a bag of hardened cement at him. Immediately after the beating, Brown went into
the convenience store and bought a bottle of lighter fluid. Brown returned to the alley and squirted
Davila with the fluid. Carlson then set Davila afire.

 Scott Ferris, who lived in an apartment complex next to the convenience store, was
climbing the stairs to his apartment and saw the assault occurring but did not know the identity of
the assailants. Ferris went into his apartment, retrieved a baseball bat, and walked to the alley to find
out what had happened. Through the fence separating the apartment complex from the alley, Ferris
saw a person (Davila) on the ground. Ferris walked to the end of the fence and saw two young men,
whom he later identified as Carlson and Brown, leaving the scene. He noticed the man he identified
as Carlson was limping. He watched them get into the passenger side of a red Mustang that was
backed into an apartment parking lot space near the end of the fence. The driver left quickly, but
Ferris was able to write down the license plate number of the Mustang.

 Immediately afterward, Ferris walked down the alley and saw Davila engulfed in
flames. When neither Ferris nor Davila could extinguish the flames, Davila ran across the street to
another gas station. Customers at the gas station eventually put out the flames using blankets and
a fire extinguisher.


 After Reina, Carlson, and Brown left the scene, they went to Sixth Street and met a
friend, Bradley Livingston. The four eventually drove to Carlson's apartment. Livingston testified
that Reina, Brown, and Carlson told him about the incident in the alley. According to Livingston, 
all three were "pumped up" when they related the events to him. They did not state that they had
agreed to commit the offense, but none denied taking part in the offense. Livingston admitted his
knowledge of the event was derived solely from the statements of others.

 Brown testified under a grant of testimonial immunity. He testified that he and
Carlson were responsible for beating and burning Davila. Although the State impeached Brown with
prior inconsistent statements, the inconsistencies between the statements and the testimony were not
relevant to Carlson's involvement. The only exception is that Brown originally told the police
Carlson accompanied him into the store to buy the lighter fluid; at trial, Brown said he went by
himself.

 Davila testified at trial about the extent of his injuries. As a result of the assault,
Davila suffered third degree burns over more than forty percent of his body, as well as a crushed
nose, a fractured cheekbone, a fractured jaw, broken ribs, and an eye injury. He spent several months
in the hospital and underwent eight surgeries to repair his injuries. 

 Carlson and Reina were indicted and tried jointly. (1) The jury charge included an
instruction on engaging in organized criminal activity, the underlying offense being either the
commission of aggravated assault or conspiracy to commit aggravated assault. See Tex. Penal Code
Ann. §§ 7.02, 15.01, & 19.02 (West 1994). The charge also included instructions on attempted
murder, the law of parties, and the law of impeachment evidence. The jury convicted both Reina and
Carlson of attempted murder and engaging in organized criminal activity. They further found both
Reina and Carlson had used deadly weapons during the commission of the crimes. The jury assessed
punishment for both at ninety-nine years' confinement for engaging in organized criminal activity
and twenty years' confinement for attempted murder, the sentences to run concurrently. 


DISCUSSION

Legal Sufficiency of the Evidence

 In his first point of error, Carlson contends "the evidence is insufficient to support
the jury's finding of guilt of organized crime." The point of error itself does not reveal whether
Carlson challenges the legal or factual sufficiency of the evidence. However, the argument and
authorities Carlson presents under his first point of error reveal he complains that the evidence is not
legally sufficient to support the verdict. Carlson cites Jackson v. Virginia, 443 U.S. 307, 318-19
(1979), for support, which states the standard a reviewing court must use in assessing the legal
sufficiency of the evidence. According to Jackson, a court undertaking a legal sufficiency review
must view the evidence in a light most favorable to the verdict and determine whether a rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. See also
Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981).

 A person engages in organized criminal activity if, with the intent to establish,
maintain, or participate in a combination or in the profits of a combination or as a member of a
criminal street gang, he commits or conspires to commit one of several predicate offenses listed in
section 71.02(a) of the Texas Penal Code. See Tex. Penal Code Ann. § 71.02(a) (West Supp. 1997). 
Among those offenses are murder and aggravated assault. See id. The indictment alleged that
Carlson engaged in organized criminal activity by intending to establish, maintain, or participate in
a combination and either (1) conspiring to commit murder or (2) conspiring to commit or actually
committing aggravated assault by (a) causing serious bodily injury or (b) using a deadly weapon. 
The charge included almost identical instructions.

 Carlson's challenge to the sufficiency of the evidence focuses on the first element of
the offense. He argues the State failed to prove he intended to participate in a combination. A
combination is defined as three or more persons who collaborate in carrying on criminal activities. 
See Tex. Penal Code Ann. § 71.01(a) (West 1994).

 The State can prove a defendant's intent to establish, maintain, or participate in a
combination by showing the existence of a combination and that the defendant committed or
conspired to commit a predicate offense with the intent to facilitate a combination. Fee v. State, 841
S.W.2d 392, 395 (Tex. Crim. App. 1992). Because direct evidence is rarely available to prove the
existence of an agreement, circumstantial evidence will suffice and is almost invariably necessary.
E.g., Mayfield v. State, 906 S.W.2d 46, 49 (Tex. App.--Tyler 1995, pet. ref'd).

 The evidence supports an inference that Carlson intended to participate in a
combination of three, namely, Reina, Brown, and Carlson himself. Furthermore, the evidence
supports the inference that the three acted to facilitate a combination. First, there is evidence that
Carlson and Brown participated in the actual beating and burning. Eyewitness Scott Ferris testified
that he saw two people committing the beating and saw them walking away from the scene; he later
identified them as Carlson and Brown. The fact that Carlson and Brown acted in concert supports
the inference that they agreed to help each other commit the crime. Second, there is some evidence,
when viewed in a light most favorable to the verdict, that suggests Reina agreed to help Brown and
Carlson commit the crime. For example, Livingston testified that Brown and Reina had run into the
victim earlier in the day and had words with him. This evidence could suggest Reina had a motive
to assist in the attack on Davila. Furthermore, Reina waited in his car, which was backed into a
space located not in the convenience store lot but in a neighboring parking lot at the end of the alley
where the assault took place. These acts could be construed as Reina's attempt to aid the group in
making a quick getaway. Third, Livingston testified that all three defendants told him pieces of the
story, that all three participated in some part of the beating, and that none of the three denied their
participation. While this evidence is not enough to establish directly the existence of a combination,
a rational trier of fact could have inferred the existence of a combination beyond a reasonable doubt
if it viewed the evidence from the perspective described above. Moreover, a rational trier of fact
could have inferred the three acted with the common intent in response to an earlier altercation to
commit an aggravated assault or murder, without getting caught. Therefore, we hold the evidence
is legally sufficient to support a verdict against Carlson for engaging in organized criminal activity.


Deadly Weapon Finding

 Carlson complains in his second and third points of error that the trial court erred by
including instructions in the charge that allowed the jury to find Carlson used his feet as deadly
weapons. If Carlson shows the charge was erroneous, there was a proper and timely objection to the
charge, and the error was harmful, then we must reverse Carlson's conviction. See Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Carlson contends there is no evidence supporting the
fact that he used his feet as deadly weapons. He preserved this error by timely objecting to the
inclusion of the instruction. We must determine, therefore, whether the trial court committed error
and, if so, whether such error was harmful.

 A deadly weapon is defined as, inter alia, "anything that in the manner of its use or
intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann.
§ 1.07(17)(B) (West 1994). Serious bodily injury is "bodily injury that creates a substantial risk of
death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the
function of any bodily member or organ." Tex. Penal Code Ann. § 1.07(49). Mr. Davila suffered
a shattered nose, broken cheekbone, and broken jawbone. A photograph taken of Davila's face
several months after the attack and after many surgeries was admitted in evidence. The photograph
shows Davila's face is markedly asymmetrical. This evidence supports the conclusion that Davila
suffered serious permanent disfigurement as a result of the attack. Furthermore, Scott Ferris testified
to seeing Carlson kicking and stomping on Davila and Carlson limping immediately after the attack. 
This evidence could support the conclusion that Carlson caused serious bodily injury to Davila by
delivering kicks that were hard enough to injure Carlson himself. All of this evidence supports an
instruction that Carlson's feet, used in a manner capable of causing serious bodily injury, could
constitute deadly weapons.

 Even if the instructions constituted error, we hold the error was harmless. The
evidence overwhelmingly showed Carlson used other deadly weapons that were alleged disjunctively
in the indictment and the jury charge. The State alleged in the indictment that Carlson used as deadly
weapons either his feet, hands, rocks, bottles, a bag of cement, or fire. The charge contained similar
instructions. There is evidence in the record that Carlson set Davila on fire after Davila had been
doused with lighter fluid. A doctor testified that about one out of every three patients with burns as
severe as Davila's dies. There is ample evidence from which a trier of fact could conclude beyond
a reasonable doubt that Carlson used fire and not his feet in the commission of attempted murder and
while engaging in organized criminal activity. In light of this evidence, we conclude the inclusion
of the instruction on feet as deadly weapons did not harm Carlson. See Watson v. State, 693 S.W.2d
938, 939 (Tex. Crim. App. 1985) (jury instructed on two theories of offense; court held that although
the evidence did not support one of the theories, error was harmless); Sanders v. State, 787 S.W.2d
435, 440-41 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd) (same). Accordingly, we overrule
Carlson's second and third points of error.


Failure to Sever Trial

 In his fourth point of error, Carlson complains the trial court erred in failing to sever
his trial from that of his co-defendant, Reina. Carlson filed a pretrial motion to sever. Generally,
a trial judge has the discretion to decide whether to sever a trial. Garza v. State, 622 S.W.2d 85, 91
(Tex. Crim. App. 1981) (opinion on rehearing). In order to obtain a severance, a defendant must
show before trial that a joint trial would prejudice one of the defendants in the case. Tex. Code
Crim. Proc. Ann. art. 36.09 (West 1981); Jackson v. State, 439 S.W.2d 843, 844 (Tex. Crim. App.
1969). 

 Carlson did not present evidence in support of his motion. A defendant does not
properly preserve error unless he offers evidence in support of his motion to sever. See Ransonette
v. State, 550 S.W.2d 36, 41 (Tex. Crim. App. 1976). Even if Carlson had properly preserved error,
he did not satisfy his burden of proof when he moved for a severance. He did not articulate any
prejudice he might suffer as a result of a joint trial, and he offered no proof of possible prejudice. 
He merely alleged in his motion that he could not get a fair trial if tried with a co-conspirator. For
the first time on appeal, Carlson contends the severance was necessary because his defense was
antagonistic to Reina's. However, Carlson does not explain how his defense differed from Reina's. 
It is apparent from the record that both Reina and Carlson argued at trial that the evidence was
insufficient to show the existence of a criminal combination. Both emphasized Reina's non-involvement. Neither party conceded any elements of any crime. Carlson does complain that Reina
testified to his own innocence and Carlson's guilt at the sentencing phase of the trial. We do not
consider this to be suggestive of an "antagonistic defense." Reina's professed innocence, if believed,
would actually negate the existence of a criminal combination. Reina's testimony had the potential
to help Carlson, rather than harm him. Furthermore, Reina did not testify until the punishment phase
of the trial; Reina's testimony could not have influenced the jury's verdict on Carlson's guilt or
innocence. Because the defenses appeared to be consistent with each other and because Carlson
provided no evidence to the contrary, we hold the trial court did not abuse its discretion in holding
a joint trial. Carlson's fourth point of error is overruled.


CONCLUSION

 Having overruled all of Carlson's points of error, we affirm the judgment of
conviction.



 ____________________________________

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: February 27, 1997

Publish

1. The record does not reveal why Brown was not tried with Carlson and Reina.


n the indictment that Carlson used as deadly
weapons either his feet, hands, rocks, bottles, a bag of cement, or fire. The charge contained similar
instructions. There is evidence in the record that Carlson set Davila on fire after Davila had been
doused with lighter fluid. A doctor testified that about one out of every three patients with burns as
severe as Davila's dies. There is ample evidence from which a trier of fact could conclude beyond
a reasonable doubt that Carlson used fire and not his feet in the commission of attempted murder and
while engaging in organized criminal activity. In light of this evidence, we conclude the inclusion
of the instruction on feet as deadly weapons did not harm Carlson. See Watson v. State, 693 S.W.2d
938, 939 (Tex. Crim. App. 1985) (jury instructed on two theories of offense; court held that although
the evidence did not support one of the theories, error was harmless); Sanders v. State, 787 S.W.2d
435, 440-41 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd) (same). Accordingly, we overrule
Carlson's second and third points of error.


Failure to Sever Trial

 In his fourth point of error, Carlson complains the trial court erred in failing to sever
his trial from that of his co-defendant, Reina. Carlson filed a pretrial motion to sever. Generally,
a trial judge has the discretion to decide whether to sever a trial. Garza v. State, 622 S.W.2d 85, 91
(Tex. Crim. App. 1981) (opinion on rehearing). In order to obtain a severance, a defendant must
show before trial that a joint trial would prejudice one of the defendants in the case. Tex. Code
Crim. Proc. Ann. art. 36.09 (West 1981); Jackson v. State, 439 S.W.2d 843, 844 (Tex. Crim. App.
1969). 

 Carlson did not present evidence in support of his motion. A defendant does not
properly preserve error unless he offers evidence in support of his motion to sever. See Ransonette
v. State, 550 S.W.2d 36, 41 (Tex. Crim. App. 1976). Even if Carlson had properly preserved error,
he did not satisfy his burden of proof when he moved for a severance. He did not articulate any
prejudice he might suffer as a result of a joint trial, and he offered no proof of possible prejudice. 
He merely alleged in his motion that he could not get a fair trial if tried with a co-conspirator. For
the first time on appeal, Carlson contends the severance was necessary because his defense was
antagonistic to Reina's. However, Carlson does not explain how his defense differed from Reina's. 
It is apparent from the record that both Reina and Carlson argued at trial that the evidence was
insufficient to show the existence of a criminal combination. Both emphasized Reina's non-involvement. Neither party conceded any elements of any crime. Carlson does complain that Reina
testified to his own innocence and Carlson's guilt at the sentencing phase of the trial. We do not
consider this to be suggestive of an "antagonistic defense." Reina's professed innocence, if believed,
would actually negate the existence of a criminal combination. Reina's testimony had the potential
to help Carlson, rather than harm him. Furthermore, Reina did not testify until the punishment phase
of the trial; Reina's testimony could not have influenced the jury's verdict on Carlson's guilt or
innocence. Because the defenses appeared to be consistent with each other and because Carlson
provided no evidence to the contrary, we hold the trial court did not abuse its discretion in holding