Hoang Viet Huu NGUYEN, a/k/a
Vic Nguyen, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–96–00723–CR.

Court of Appeals of Texas,
Austin.

Aug. 31, 1998.

Allen C. Isbell, Houston, for Appellant.

Ronald Earle, District Attorney, Lisa Dotin Stewart, Assistant District Attorney, Austin, for Appellee.

Before POWERS, JONES and B.A. SMITH, JJ.

JONES, Justice.

Appellant Hoang Viet Huu Nguyen was convicted of murder, *see* Tex. Penal Code Ann. § 19.02(b) (West 1994), and engaging in organized criminal activity, *see id.* § 71.02. The jury assessed punishment at ninety-nine years' confinement in the Texas Department of Criminal Justice, Institutional Division, for

each conviction. Nguyen appeals asserting five points of error: (1) the evidence is factually insufficient to support his conviction for murder, (2) the evidence is legally insufficient to support his conviction for engaging in organized criminal activity, (3) the evidence is factually insufficient to support his conviction for engaging in organized criminal activity, (4) the trial court erred in refusing to instruct the jury on criminally negligent homicide, and (5) the trial court erred in denying appellant's request that it order spectators to remove large buttons portraying a color photograph of the deceased while they were in the courtroom. We will affirm the murder conviction and reverse the conviction for engaging in organized criminal activity.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 21, 1995, Nguyen and a group of friends attended a party sponsored by the Asian Cultural Committee on the University of Texas campus. The party ended about 2:00 a.m. and a group of twenty-five to thirty young people decided to have breakfast at a Coco's restaurant located at IH35 and Oltorf Street in Austin. Also during this evening, the University of Texas Latin American Students Association sponsored a party. A group of four young men including Jose de la Morena left this party and also decided to have breakfast at Coco's.

The two groups were seated near each other in the restaurant. A female in Nguyen's group was walking back from the restroom past Morena's table when Morena said "show me your nipples" or "sugar nipples." She returned to her friends and told them about the remark. Her group soon left the restaurant, but seven males, including Nguyen, returned and confronted Morena's group in the restaurant demanding that the person who made the statement step outside.

Three bouncers from a local nightclub were eating nearby and came over to help calm the situation. The manager had someone call the police, and she asked Nguyen's group to leave and asked Morena and his friends to finish their meals and leave. Nguyen's group left immediately. Upon leaving

the restaurant, Nguyen, Mike Ly, and Jason Pan agreed among themselves to return and fight. They eventually went to Nguyen's apartment, and someone told Nguyen to get the "gats," meaning guns. Nguyen retrieved a .22 semi-automatic rifle. As they left the apartment, Mike Ly's roommate, Linh Pham, joined the group.

The four rode back to Coco's in Mike Ly's small two-door car. Ly drove, Nguyen rode in the front passenger seat, Pan sat behind Nguyen, and Pham sat behind the driver. They testified that they intended to go back to the restaurant and scare Morena's group by shooting the gun. When they returned to Coco's, they circled the restaurant checking the area for police and verifying that their targets were still there. Ly parked the car next door to the restaurant. The group sat quietly waiting in the car for Morena's group to exit the restaurant.

Morena and two friends, Bryan Lord and Armando Gutierrez, left the restaurant just before 4:00 a.m. Ly saw the group leaving and started the car. He pulled the car onto the interstate access road just in front of Coco's. Morena and his friends were standing around Lord's Volkswagen when Nguyen began firing the rifle. Morena received a fatal shot to the head as well as a shot in the leg. Gutierrez received a shot in the leg, but Lord was not wounded.

At trial, Nguyen admitted that he fired the weapon, that Ly drove the car, and that Pan passed the gun to him from the backseat. He testified that he did not aim the rifle but merely intended to scare the victims. He testified he "freaked out" when he learned on the news the next night that Morena had died. Nonetheless, the jury convicted him of murder as well as engaging in organized crime.

## DISCUSSION

■ In his first point of error, Nguyen asserts that the evidence is factually insufficient to support a conviction for murder. In a factual-sufficiency review, the appellate court reviews all the evidence without the prism of "in the light most favorable to the prosecution" used in a legal-sufficiency re-

view; the court may consider the testimony of defense witnesses and the existence of alternative hypotheses. *Stone v. State,* 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd untimely filed). The court should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Id.; see Clewis v. State,* 922 S.W.2d 126, 136 (Tex.Crim.App.1996) (adopting the standard in *Stone* ). The appellate court reviews the evidence weighed by the jury that tends to prove the disputed facts and compares it to evidence that tends to disprove the disputed facts. *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996). The court must be appropriately deferential so as to avoid substituting its own judgment for that of the factfinder. *Clewis,* 922 S.W.2d at 133.

■ Based on the indictment and relevant statute, to be found guilty of murder, Nguyen had to have been found to have intentionally or knowingly caused Morena's death.[1] *See* Penal Code § 19.02(b). A person acts *intentionally* to cause another's death when it is the actor's conscious objective or desire to cause that result. *See id.* § 6.03(a). A person acts knowingly to cause another's death when he is aware that his conduct is reasonably certain to cause that result. *See id.* § 6.03(b).

Nguyen admits that the only disputed element is his intent at the time he fired the rifle. To demonstrate the required intent, the State presented evidence that, although Nguyen fired only a limited number of times, two of those bullets hit Morena, another bullet hit Gutierrez (who was standing next to Morena), one hit the car next to Morena, two more hit nearby cars, one bullet hit a restaurant window, and another hit a tree just in front of the restaurant. The victims stood in the parking lot between Nguyen and the restaurant. The police found three empty shell casings, and Ly found no more than six casings in his car the next day. Gutierrez testified hearing seven or eight pops from the gun. We believe the evidence of the

number of shots and the location of bullet holes raises a reasonable inference that Nguyen intended to hit the victim.

Nguyen points to the testimony of State witnesses to show why he and the others had returned to Coco's with the gun. All stated that they only returned to the restaurant to scare Morena's group. Nguyen himself stated, "I want the jury to know that there is never intent to hurt anyone. Not really to hurt anyone. And I want the family to know also that I never meant to hurt anyone." The distance between the shell casings found at the scene of the crime suggests the shots were fired from a moving vehicle. Nguyen asserts that the evidence of bullet holes over a wide area of the restaurant grounds indicates an intent to scare rather than an intent to hit a specific target. Ly testified that Nguyen did not shoot directly at Morena but up into the air. Nguyen contends that testimony the car was jerking and nearly stalled provides evidence of why Nguyen's attempt to merely scare Morena failed.

While Nguyen's testimony certainly challenges the State's evidence concerning his mental state at the time in question, the jury is the exclusive judge of the credibility of the witnesses. *See Skillern v. State,* 890 S.W.2d 849, 879 (Tex.App.—Austin 1994, pet. ref'd). Having reviewed all the evidence, including both Nguyen's statement that he was merely trying to scare Morena as well as evidence of the number and location of the gunshots, we conclude that the murder conviction is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. Point of error one is overruled.

■ In his second point of error, Nguyen asserts that the evidence is legally insufficient to support a conviction for engaging in organized criminal activity. In reviewing the legal sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443

---

1. The State may anticipate variances in the proof by pleading alternative mental states in the conjunctive when proof of any one of the mental states will support a guilty verdict. *See Zanghetti*

*v. State,* 618 S.W.2d 383, 387–88 (Tex.Crim.App. 1981); *Belcher v. State,* 962 S.W.2d 653, 656 n. 1 (Tex.App.—Austin 1998, no pet.).

U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ Based on the indictment and the relevant statute, Nguyen could be found to have committed the offense of engaging in organized criminal activity if, with the intent to establish, maintain, or participate in a combination, he committed or conspired to commit aggravated assault by threatening or causing bodily injury to Morena with a deadly weapon. *See* Penal Code § 71.02(a)(1). The offense requires both a mental intent regarding a "combination" and the commission of one or more of a list of crimes. A "combination" is defined to mean "three or more persons who collaborate in carrying on criminal activities." *Id.* In particular, Nguyen asserts the evidence was insufficient to show that a "combination" existed.

■ In *Barber v. State,* 764 S.W.2d 232, 236 (Tex.Crim.App.1988), the court discussed the meaning of "combination."[2] It stated that the term "collaborate" was not defined in the statute, but found a workable definition of "collaborate" to be "working together with a specified number of others in specified criminal activities." *Id.* (citing *Lucario v. State,* 677 S.W.2d 693, 699 (Tex.App.—Houston [1st Dist.] 1984, no pet.)). The issue Nguyen raises is whether "combination" requires something more than a three-person conspiracy, namely some degree of continuity.[3]

Comparing the language of criminal conspiracy and combination, beyond the difference in the number of participants required, a conspiracy requires that its participants agree one or more of them will commit an offense (and that at least one participant commit an act in furtherance of the agreement), *see* Penal Code § 15.02(a), while a combination requires that its participants collaborate in "carrying on criminal activities." *Id.* § 71.01(a).[4]

Like the term "collaborate," the phrase "carrying on" is not defined in the statute.[5] The term "carry on" is commonly defined as "conduct, manage" for the transitive form of the verb. *Webster's Third International Dictionary* 344 (Philip B. Gove ed., 1986). Another dictionary defines the transitive form of the verb "carry on" as "to maintain in operation <*carried on* the business>." *Webster's Ninth New Collegiate Dictionary* 210 (Frederick C. Mish ed., 1990). Furthermore, the term "carry on trade or business" is defined as "to conduct, prosecute or continue a particular avocation or business as a continuous operation or permanent occupa-

2. In *Barber,* the court also noted certain distinctions between criminal conspiracy and organized crime. 764 S.W.2d at 234. One person alone cannot be found guilty of conspiracy, but one person alone may be guilty of engaging in organized crime. *Id.* To engage in organized crime, the offender must commit one or more of a list of proscribed acts in furtherance of the combination (and he may be the only one to have done so), while in conspiracy all conspirators are guilty if any one of them performs an overt act in pursuance of the agreement. *Id.* at 235.

3. The federal organized crime statute, 18 U.S.C.A. § 1961–68 (West 1984 & Supp.1998), uses the term "pattern of racketeering activity" *Id.* § 1962(1). A "pattern of racketeering activity" requires at least two acts of racketeering activity within a 10–year period. *Id.* § 1961(5); *see H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 232, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The Supreme Court stated that there must be something to the offense beyond simply the number of predicate acts. *Id.* at 238, 109 S.Ct. 2893. The court looked to both the common meaning of the word "pattern" as well as

the legislative history of the statute in determining that the factors of continuity plus relationship (between the acts alleged) combine to form a pattern. *Id.* at 239, 109 S.Ct. 2893.

4. In *Barber,* the court discussed some distinctions between criminal conspiracy and engaging in organized crime, but did not distinguish conspiracy from a combination.

5. In *Lucario,* the court of appeals stated that "Webster's Third New World International Dictionary (1976) defines 'carrying-on' as *'an instance* of behavior.'" 677 S.W.2d at 693 (italics in original). Another definition of "carrying-on" is *"n, pl* **carryings-on:** foolish, excited, or improper behavior; *also* : an instance of such behavior <scandalous *carryings-on*>." *Webster's Third New International Dictionary* 344 (Philip B. Gove ed., 1986) (italics and bold in original). In the Penal Code definition of "combination," however, the term "carrying on" (no hyphen) is used, *see* Tex. Penal Code Ann. § 72.01(a), and it is used not as a noun, but as a transitive verb, i.e., it has an object. It seems to us obvious that "carrying-on" (the noun) and "carrying on" (the verb) are not interchangeable terms.

tion." *Black's Law Dictionary* 214 (6th ed., 1991).

 The primary rule of statutory interpretation is that a court must look for and give effect to the intent of the Legislature. *Ex parte Matthews*, 933 S.W.2d 134, 137 (Tex.Crim.App.1996). To ascertain legislative intent, a court must look to the statute as a whole and not just to isolated provisions. *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985). Language used later in the Penal Code chapter on organized crime implies an element of continuity: for example, it is no defense to prosecution for engaging in organized crime that "once the initial combination of three or more persons is formed there is a change in the number or identity of persons in the combination as long as two or more persons remain in the combination and are involved *in a continuing course of conduct constituting an offense under this chapter.*" Penal Code § 71.03(4) (emphasis added).

The legislative history of the statute also indicates that a "combination" is more than a mere conspiracy or agreement to commit a single crime or engage in a single criminal episode. The statute originated in the 65th Legislature as Senate Bill 151 and contained the definition of "combination" currently found in the statute. The original House version of the statute, however, defined a combination simply as five or more people who engage in a criminal conspiracy as defined by section 15.02(a) and (b) of the Penal Code. *See* House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. S.B. 151/C.S.S.B. 151, 65th Leg., R.S. (1977). The House definition was offered in a substitute for S.B. 151, but the conference committee rejected the House/substitute version and adopted the language in the Senate version. *See* Conference Comm. Report, S.B. 151, 65th Leg., R.S. (May 25, 1977).

 In general, the courts will give effect to all words in a statute and, if possible, will not treat any language as surplusage. *Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex.1987). In consideration of all these points, we are persuaded that the definition of "combination" requires something beyond merely a three-person conspiracy and requires that the members of the "combina-tion" work together in a continuing course of criminal activities.

In *Carlson v. State*, 940 S.W.2d 776, 779 (Tex.App.—Austin 1997, pet. ref'd), this Court affirmed the defendant's conviction for engaging in organized crime. The State compares the evidence of a combination in that case to the evidence found here. We believe, however, that the cases are distinguishable. In *Carlson*, there was evidence that the defendant and another man beat and burned a homeless man while a third man waited in a car. *Id.* The legal sufficiency issue raised by the appellant in *Carlson* focused on whether all three of the persons alleged to be members of the combination were actually involved in the assault, particularly the person who waited in the car and did not participate in the actual beating. *Id.* The issue of whether a combination must involve a continuing course of criminal activity was not raised.

The State points to other cases in which single incident offenses lead to convictions for engaging in organized crime. *See Fletcher v. State*, 960 S.W.2d 694 (Tex.App.—Tyler 1997, no pet.); *Queen v. State*, 940 S.W.2d 781 (Tex.App.—Austin 1997, pet. ref'd); *Brosky v. State*, 915 S.W.2d 120 (Tex.App.—Fort Worth 1996, pet. ref'd); *Jefferson v. State*, 909 S.W.2d 247 (Tex.App.—Texarkana 1995, pet. ref'd); *Ex parte Fite*, 814 S.W.2d 253 (Tex.App.—Austin 1991, no pet.). However, in none of these cases did the defendant specifically raise the issue of whether a "combination" requires continuity.

Nguyen asserts that the members of a combination must collaborate in carrying on criminal "activities," stressing the plural and arguing that an intent to collaborate on a single criminal incident or episode does not constitute a combination, even though the offense itself only requires the performance of one of the listed crimes. Importantly, we note that one may engage in organized crime by committing one or more of the proscribed acts with the intent to *establish* a combination; accordingly, the proscribed action may be the first actual crime committed by a member of the combination. Nonetheless, there must be some evidence of intent to

establish a combination, i.e., a group of three or more that works together in continuing a course of criminal activities.

We now consider whether there is legally sufficient evidence to support a finding that Nguyen intended to establish, maintain, or participate in a combination when he committed the proscribed act. Such an intent may be inferred from circumstantial evidence. *See Mayfield v. State*, 906 S.W.2d 46, 49 (Tex.App.—Tyler 1995, pet. ref'd). All of the evidence here, however, indicates that the murder was committed with intent and agreement to retaliate through the commission of a single offense; no evidence indicates an intent to establish, maintain, or participate in a group that would work together in continuing a course of criminal activities. Point of error two is sustained.

Because we have sustained point of error two based on the legal sufficiency of the organized crime conviction, we need not address point of error three, which is based on the factual sufficiency of the organized crime conviction.

In his fourth point of error, Nguyen argues that the trial court erred in refusing to instruct the jury on criminally negligent homicide, which he asserts is a lesser-included offense of murder. The offense of criminally negligent homicide is committed when a person causes the death of an individual by criminal negligence. Penal Code § 19.057. A person acts with criminal negligence with respect to the result of his conduct when he ought to be—but is not—aware of a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(d).

A two-prong test is to be met before a jury charge on a lesser-included offense must be given: first, the lesser offense must be included within the proof necessary to establish the charged; second, there must be some evidence that if the defendant is guilty, he is guilty only of the lesser charge. *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Crim.App.1985); *Royster v. State*, 622 S.W.2d 442, 447 (Tex.Crim.App. 1981). In applying the two-prong test, the trial court should make a determination whether the evidence of the lesser offense would be sufficient for a jury rationally to find that the defendant is guilty only of that offense, and not the greater offense. *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex.Crim. App.1993).

The key to criminal negligence is the failure of the actor to perceive the risk created by his conduct. *Lewis v. State*, 529 S.W.2d 550, 553 (Tex.Crim.App.1975). It is essential that the record contain evidence showing an unawareness of the risk before a charge on criminally negligent homicide is required. *Mendieta v. State*, 706 S.W.2d 651, 653 (Tex.Crim.App.1986).

Every case must be examined in the light of its particular facts and circumstances to determine if the defendant was unaware of the risk his conduct created. *Thomas v. State*, 699 S.W.2d 845, 851 (Tex.Crim.App. 1985). In *Thomas*, there was evidence that the defendant knew the gun was loaded, that he was familiar with guns and the potential for injury, and that he pointed a gun toward someone else. *Id.* at 851–52 The mere fact that the defendant testified someone bumped him, causing him to pull the trigger, does not necessarily alter the awareness of risk. *Id.* at 850. Just because part of the conduct may be involuntary does not relieve a defendant of responsibility and culpability for the entire action. *Id.* It may be the case that a defendant has awareness of the risk and disregards it. *Id; see Navarro v. State*, 863 S.W.2d 191, 203–05 (Tex.App.—Austin 1993) (evidence indicated appellant should have been aware of risk that his conduct might kill victim), *pet. ref'd*, 891 S.W.2d 648 (Tex.Crim. App.1995); *cf. Molitor v. State*, 827 S.W.2d 512, 526–29 (Tex.App.—Austin 1992) (Jones, J., dissenting) (anyone who knows nature of guns, knows gun is loaded, and knowingly points gun toward another person cannot help but be aware of risk even if gun discharges accidentally; but testimony that very act of *pointing* loaded gun toward victim was not volitional requires charge on criminally negligent homicide), *pet. dism'd*, 862 S.W.2d 615 (Tex.Crim.App.1993).

Nguyen argues that, in the present case, the evidence relevant to his culpable mental state at the time of the shooting gives rise to

more than one inference. At trial Nguyen was asked what he thought the chances were of hitting any of the victims. He stated that "at the time, ma'am, we didn't think there was any chance of hitting anyone at all because we just didn't think about it. Like one in a million." He testified that he was shooting toward the direction of the restaurant from which the victim had just exited. Nguyen further testified that they wanted the victims to hear the rifle shots because "that's what scares people." Nguyen agreed that he was fully aware of the danger of weapons, that he knew somebody could get killed, and that he was fully aware of that when he went to that restaurant with a loaded gun. Nguyen testified that he just was not thinking about it at that time because of the "heat of the moment."

Even if evidence that the accused never willfully pointed a gun toward the victim requires a charge on the lesser offense, Nguyen's testimony that he meant to both point and shoot the gun in the direction of the victims to scare them conclusively shows awareness of the risk. Thus, a charge on criminally negligent homicide was not required. Based on the facts and circumstances presented as evidence in this case, we conclude the court did not err in refusing to submit a jury charge on criminally negligent homicide. Point of error four is overruled.

■ In his fifth point of error, Nguyen asserts that the trial court erred in denying appellant's request that spectators be ordered to remove large buttons portraying a color photograph of the deceased while they were in the courtroom where the jurors could see the buttons during the trial. Constitutional guarantees assure an accused in a criminal trial the right to be tried by indifferent, impartial jurors whose verdict is based on the evidence developed at trial rather than elicited by external influences. *See*

U.S. Const. amend VI, XIV; *Howard v. State*, 941 S.W.2d 102, 117 (Tex.Crim.App. 1996).

■ To prevail on an appeal claiming reversible error resulting from external juror influence, an appellant must show either actual or inherent harm. *Id.* The test for actual influence is whether jurors actually articulated being aware of a prejudicial effect. *Id.* There is no assertion of actual influence in the present case. Inherent influence is shown by a reasonable probability that the influence interfered with the jury's verdict and is a rarity reserved for extreme situations. *Id.* In *Howard*, the court concluded that the presence of twenty uniformed officers sitting in the back of a courtroom with eighty other spectators during a trial of a defendant accused of murdering an officer did not result in inherent prejudice. *Id.* at 118. The court noted that the presence of the officers did not overwhelm the composition of the spectator gallery. *Id.* at 118 n. 14.

In the present case, defense counsel objected that seven individuals out of at least twenty-five persons in the courtroom wore the buttons in question. Although defense counsel stated, "It'll be clearly visible to the jurors," the record contains no indication where the individuals were sitting, whether they were seated together, or if the jurors did in fact see the buttons from where they were seated. It is impossible to tell from this record whether the buttons even came close to being such an overwhelming presence in the courtroom that it was reasonably probable they influenced the jury's verdict.[6] We conclude that the record here does not demonstrate that the trial court erred in denying Nguyen's request to have the spectators remove the buttons. Point of error five is overruled.

---

6. Nguyen describes several other cases involving outbursts or disruptions to a trial's proceedings, but none of them demonstrate how the present case involves inherent influence. *See Landry v. State*, 706 S.W.2d 105 (Tex.Crim.App.1985) (commotion in trial audience caused by deceased's widow fainting); *Ashley v. State*, 362 S.W.2d 847 (Tex.Crim.App.1963) (emotional ver-

bal outburst by deceased's widow); *Guse v. State*, 97 Tex.Crim. 212, 260 S.W. 852 (Tex.Crim.App. 1923) (sheriff interrupted defendant's testimony to deny police had entrapped defendant); *Gutierrez v. State*, 945 S.W.2d 287, 292 (Tex.App.—San Antonio 1997, no pet.) (unarmed police cadets attended a trial involving neither a police officer victim or defendant).

458

## CONCLUSION

Having overruled Nguyen's first, fourth and fifth points of error, we affirm the trial court's judgment of conviction for murder. However, because we sustain point of error two, we reverse the conviction for engaging in organized crime and order an acquittal as to that charge.