COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)
 

SAUL MEZA,
)
 No. 08-02-00077-CR

)


 Appellant,
)
 Appeal from

)
 

v.
)
 383rd District Court

)


THE STATE OF TEXAS,
)
 of El Paso County, Texas

)


 Appellee.
)
 (TC# 20010D04619)


MEMORANDUM OPINION



 Saul Meza appeals his conviction on two counts of aggravated assault. The jury found him
guilty and the judge assessed punishment at four years in the institutional division of the Texas
Department of Criminal Justice. We affirm.

FACTUAL SUMMARY


 On August 11, 2001, at about 2 p.m., Rudy Avelar and two of his friends were in Fabens,
Texas and on their way to a family reunion. Avelar was talking with his friends in the street when
he suddenly felt someone cover his head and eyes with some kind of cloth, drag him across the hood
of the car and throw him to the ground. Three individuals began punching and kicking him. His
friends did not attempt to stop the attack. All Avelar could do was lie on the ground and try to
protect himself by covering his head and genitals with his hands. Sometime during the assault, the
cloth was removed from his head and he recognized the assailants as Manuel Castillo, Juan Meza,
and Appellant. Appellant was delivering the heaviest blows.

 Several neighbors heard the commotion and called to the men to stop. All three of the
individuals got into their car; Castillo was driving, Juan sat in the backseat and Appellant sat in the
passenger side front seat. Before they drove off, Castillo put the car in reverse; one of them grabbed
Avelar's leg and dragged him behind the car. Avelar was unsure who grabbed him because his eyes
were still swollen shut. His attackers finally released him and left. Avelar had some scratches and
blood on his face, but was able to walk on his own to his home a block or so away. 

 The police arrived several hours later. A white vehicle flagged the officers down and
described the car in which the suspects had fled. A vehicle matching the description was located and
the suspects were apprehended. Avelar was notified and brought to the scene where he identified
Appellant. Avelar was taken to the hospital that night and treated for bruises and swelling. 

 At the time of the assault, Avelar was a member of the Nasty Boys. He believed that
Appellant and his companions were members of the Barrio Fabens gang. He knew Appellant and
Juan Meza because they had grown up together in the same neighborhood and his uncle had
associated with them. 

LEGAL SUFFICIENCY


 In his first issue for review, Appellant contends that the evidence was legally insufficient to
support the jury's finding that in the manner of their use or intended use, his foot and motor vehicle
were capable of causing serious bodily injury. In reviewing the legal sufficiency of the evidence to
support a criminal conviction, we must review all the evidence, both State and defense, in the light
most favorable to the verdict to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159
(Tex.Crim.App. 1991). This familiar standard gives full play to the responsibility of the trier of fact
fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences
from basic to ultimate facts. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. We do
not resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier
of fact to do so. See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State,
819 S.W.2d 839, 843 (Tex.Crim.App. 1991). Instead, our duty is only to determine if both the
explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted
at trial in a light most favorable to the verdict. Adelman, 828 S.W.2d at 422. In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict. Matson, 819 S.W.2d at 843. 
Further, the standard of review is the same for both direct and circumstantial evidence cases. Geesa,
820 S.W.2d at 158.

Deadly Weapon


 To obtain a conviction for aggravated assault with a deadly weapon, the State must prove the
defendant intentionally or knowingly threatened another with imminent bodily injury and that he
used a deadly weapon during the commission of the offense. See Tex.Pen.Code Ann. § 22.02(a)(1)
& (2)(Vernon 2003); DeLeon v. State, 865 S.W.2d 139, 141 (Tex.App.--Corpus Christi 1993, no
pet.). A person acts intentionally when it is his "conscious objective or desire" to act in that way or
to cause the result. Tex.Pen.Code Ann. § 6.03(a)(Vernon 2003). A person acts knowingly when
he is aware that his action is reasonably certain to cause the result. Tex.Pen.Code Ann. § 6.03(b). 

 An object is a deadly weapon when it is actually used in a manner which causes, or has the
potential to cause, death or serious bodily injury. Tex.Pen.Code Ann. § 1.07(a)(17)(B); Hill
v. State, 913 S.W.2d 581, 591 (Tex.Crim.App. 1996); Powell v. State, 939 S.W.2d 713, 717
(Tex.App.--El Paso 1997, no pet.). Serious bodily injury is "bodily injury that creates a substantial
risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment
of the function of any bodily member or organ," while bodily injury means physical pain, illness, or
any impairment of physical condition. Tex.Pen.Code Ann. § 1.07(a)(8) & (46). 

The Foot as a Deadly Weapon


 In the first count of the indictment, Appellant was charged with the offense of aggravated
assault by:

 [T]hen and there intentionally, knowingly, and recklessly cause bodily injury to
RUDY AVELAR by kicking RUDY AVELAR about the head with Defendant's foot,
and the said Defendant did then and there use and exhibit a deadly weapon, during
the commission of said assault, to-wit: a foot, that in the manner of its use and
intended use was capable of causing death and serious bodily injury,


 And it is further presented that the said Defendant used and exhibited a deadly
weapon, to-wit: a foot, during the commission of and immediate flight from said
offense.


 A foot is not a deadly weapon per se, but it can become a deadly weapon if in the manner of
use, the foot is capable of causing death or serious bodily injury. Powell, 939 S.W.2d at 717; see
Clark v. State, 886 S.W.2d 844, 845 (Tex.App.--Eastland 1994, no pet.)(evidence supported finding
feet used as deadly weapons where defendant struck and kicked a two-year-old child in manner
capable of causing death); Hilla v. State, 832 S.W.2d 773, 779 (Tex.App.--Houston [1st Dist.] 1992,
pet. ref'd)(evidence supported finding that victim's death was caused by kicks from defendant's
foot). In Carlson v. State, 940 S.W.2d 776, 780 (Tex.App.--Austin 1997, pet. denied), evidence that
the victim suffered a shattered nose, broken cheekbone, and broken jawbone supported the
conclusion that he suffered serious permanent disfigurement as a result of the attack. An eye witness
testified that the defendant kicked and stomped on the victim to the extent that the defendant was
limping immediately after the attack. The court concluded that the defendant caused serious bodily
injury to the victim by delivering kicks with such force that he injured himself. His feet were thus
used in a manner capable of causing serious bodily injury and constituted deadly weapons. Carlson,
940 S.W.2d at 780. 

 Appellant argues that the State failed to prove that his foot was capable of causing serious
bodily injury. We disagree. Deputy Sheriff Rodriguez testified that Avelar kept losing
consciousness while he was being interviewed the day of the attack. Deputy Sheriff Reyes
questioned Avelar at the hospital that evening and observed visible facial and head injuries. 
Photographs taken at the hospital revealed injuries to Avelar's face, notably swelling around his left
eye. The pictures also depicted bruising and various scratches on the front and back of his head. 
Avelar still felt pain as a result of the kicks. Deputy Reyes explained that in his experience as an
investigating officer, a foot can be a deadly weapon and if someone is kicked around the face or
head, it has the potential to cause serious bodily injury or death. Because a foot is capable of causing
serious bodily injury, especially when used to kick someone in the head, and because the record
demonstrates that Appellant struck repeated heavy blows to Avelar's head and body, we conclude
that his foot constituted a deadly weapon.

The Motor Vehicle as a Deadly Weapon


 In the second count of the aggravated assault charges, the court charged Appellant for the use
of a motor vehicle as a deadly weapon as follows:

 [T]hen and there intentionally, knowingly, and recklessly cause bodily injury to
RUDY AVELAR by dragging the body of RUDY AVELAR with a motor vehicle,
and the said Defendant did then and there use and exhibit a deadly weapon, during
the commission of said assault, to-wit: a motor vehicle, that in the manner of its use
and intended use was capable of causing death and serious bodily injury,


 And it is further presented that the said Defendant used and exhibited a deadly
weapon, to-wit: a motor vehicle, during the commission of and immediate flight from
said offense.


 A vehicle is not a deadly weapon per se, but it can become a deadly weapon if in the manner
of use, it is capable of causing death or serious bodily injury. Butler v. State, 928 S.W.2d 286, 288
(Tex.App.--Fort Worth 1996, pet. ref'd), citing Tyra v. State, 897 S.W.2d 796, 798-99
(Tex.Crim.App. 1995). It is incontrovertible that an automobile is capable of causing death or
serious bodily injury, and it "strains the bounds of reason" to contend otherwise. See Parrish v.
State, 647 S.W.2d 8, 10 (Tex.App.--Houston [14th Dist.] 1982, no pet.).

 Deputy Sheriff Reyes testified that in his experience an automobile could be used as a deadly
weapon and he opined that if someone were to be dragged by a car, it could cause serious bodily
injury or even death. These actions clearly threatened imminent bodily injury to Avelar. See St.
Clair v. State, 26 S.W.3d 89, 97 (Tex.App.--Waco 2000, pet. ref'd). Because a motor vehicle is
capable of causing death or serious bodily injury, the jury could infer from Appellant's conduct that
he intended to use it as a deadly weapon. See Tyra, 897 S.W.2d at 799. We conclude the evidence
is legally sufficient to support the jury's finding that both a foot and a motor vehicle can be used as
a deadly weapon and overrule Issue One.

ALLEN CHARGE


 In Issue Two, Appellant complains that the court improperly coerced the jury into reaching
a verdict by giving an "Allen" charge. Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed.
528 (1896). The jury was instructed concerning the manner of deliberation: 

 (a) in order to return a verdict, each juror must agree thereto;


 (b) jurors have a duty to consult with one another to deliberate with a view of
reaching an agreement, if it can be done without violence to individual judgment;


 (c) each juror must decide the case for himself or herself, but only after an impartial
consideration of evidence with their fellow jurors;


 (d) in the course of deliberations, jurors should not hesitate to reexamine their own
views and change their opinion if convinced it is erroneous;


 (e) no juror should surrender his or her honest conviction as to the weight or effect
of the evidence solely because of the opinion of their fellow jurors, or for the mere
purpose of returning a verdict.


During the course of deliberations the jury sent five notes to the trial court. In the first, the jury
revealed that after four votes, they still were unable to reach a unanimous decision. The judge then
orally informed the jurors as follows:

 COURT: I have received your message signed by Mr. Taboada, your presiding juror,
saying that you can't come to a unanimous decision. 


 What happens in this case is that it's my duty to first remind you of the instructions
that are on the -- about the last page of that document, where it says, you know,
'Carefully examine the evidence. Come to your own conclusions, but a juror should
not hesitate to re-examine their views if convinced by other jurors that they're
erroneous.' It also says that no juror should surrender their convictions if they
sincerely believe that their position is correct. You shouldn't surrender that position
just for the sake of rendering a verdict. That's true.

 

 So, you've got those two things to think about there. The other thing is this: that if
this jury is not able to come to a decision in this case, then, a mistrial has to be
granted and the case has to be retried again by another jury, another trial, another
date. And there's certainly no guarantee that the next jury will find the case any
easier to decide than you found it. 


 So, I must instruct you to continue deliberating toward the goal of reaching a
conclusion, a decision in the case. I must ask you to continue deliberating, and you
have everything you need. You did get the exhibits brought into you and everything? 
Did you get the exhibits and everything else brought into the jury room?


 FOREMAN: We got the photographs and the hospital report.


 COURT: Okay. All right. That, combined with the testimony you heard, is the
evidence you have to consider. And I would just urge you that, if at all humanly
possible, that you reach a decision in this thing one way or the other. Okay. We'll
let you go to work some more. [Emphasis added].


The jury then retired to the jury room to continue deliberations. In the second note, the jurors
requested a clarification regarding identification testimony. The judge orally advised them to be
more specific in their request. In the third note, they requested the specific evidence to be read back
to them and the court reporter did so. The judge then asked the jurors for their final vote: 

 What I need to ask you at this point is -- I don't want to know which way the jury is
leaning, whether it's, you know, more for guilty or more for not guilty. I don't want
to know that at all; but, I do need to know what the split is -- you know six, six; eight,
four -- not which way it's leaning, just the number. I need you to go back and write
me a note on that, Mr. Taboada, and send that to me. That's what I need to know at
this point. 


In the fourth note, the jurors indicated a final vote of 7 to 5. After deliberating for over four hours,
they presented the fifth note indicating they were unable to reach a unanimous decision. The trial
court released the jurors and allowed them to leave for the evening without any objection. The
following morning, the jury reached a unanimous decision.

 Appellant argues that by telling the jury to try and reach a decision "if at all humanly
possible," the trial court coerced the jurors to reach a verdict. He further alleges that the trial court
improperly polled the jury regarding the split and violated Article 36.27 of the Texas Code of
Criminal Procedure by giving the jury oral supplemental instructions.

 An Allen charge is a supplemental charge given to a deadlocked jury which directs the jurors
to examine the submitted questions with candor and decide the case if the jurors can conscientiously
do so. Allen, 164 U.S. at 501, 17 S.Ct. 154. An Allen charge is unduly coercive and therefore
improper only if it pressures jurors into reaching a particular verdict or improperly conveys the
court's opinion of the case. See Arrevalo v. State, 489 S.W.2d 569, 571 (Tex.Crim.App. 1973). We
review the decision to give an Allen charge under an abuse of discretion standard. See U.S. v.
Wickersham, 29 F.3d 191, 194, (5th Cir. 1994). Our inquiry focuses on whether it had a coercive
effect on juror deliberation. Howard v. State, 941 S.W.2d 102, 123 (Tex.Crim.App. 1996), quoting
Lowenfield v. Phelps, 484 U.S. 231, 237, 108 S.Ct. 546, 550, 98 L.Ed.2d 568 (1988).

 We disagree that the instruction here was coercive. See Arrevalo, 489 S.W.2d at 571-72;
Willis v. State, 761 S.W.2d 434, 437-38 (Tex.App.-- Houston [14th Dist.] 1988, pet. ref'd); Rodela
v. State, 666 S.W.2d 652, 652-53 (Tex.App.--Corpus Christi 1984, pet. ref'd). The jury had
deliberated a relatively short period of time when they first advised the trial court that they could not
reach a verdict. In asking for additional deliberations, the court instructed them to reexamine their
positions and determine that their opinions were based upon evidence, but the court also advised
them that no individual should yield his or her own conscience and positive conviction about the
case. Armstead v. State, 677 S.W.2d 266, 271 (Tex.App.--El Paso 1984, pet. ref'd). There is
nothing in the record to suggest the trial court expressly or impliedly insisted on a dispositive verdict. 
Because Appellant has failed to present any evidence to suggest that the jury instruction was coercive
or that the jury was actually coerced, we find no abuse of discretion. We overrule Issue Two. 
Having overruled both issues review, we affirm the judgment of conviction.


July 31, 2003 
 ANN CRAWFORD McCLURE, Justice

Before Panel No. 1

Larsen, McClure, and Chew, JJ.


(Do Not Publish)