# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00670-CR

**Ronald Hutchins, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NO. 00-5548, HONORABLE BOB PERKINS, JUDGE PRESIDING**

Appellant Ronald Hutchins appeals from his conviction of the offense of murder. *See* Tex. Pen. Code Ann. ' 19.02(b)(1)(2) (West 1994). The jury assessed appellant=s punishment at imprisonment for seventy-six years and a fine of $10,000. Appellant asserts that the evidence is legally and factually insufficient and that the evidence conclusively shows he committed the offense under the immediate influence of sudden passion arising from an adequate cause. Also, appellant complains of spectator misconduct, of witnesses= violation of the rule, and of the exclusion of admissible evidence. We will affirm the judgment.

In his first point of error, appellant asserts that the Aevidence at trial was legally insufficient because appellant=s actions were in self defense.@ In reviewing the legal sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Patrick v. State*, 906 S.W.2d 481,

486 (Tex. Crim. App. 1995); *Aiken v. State*, 36 S.W.3d 131, 132 (Tex. App.CAustin 2000, pet. ref=d). The standard of review is the same whether the evidence is direct, circumstantial, or both. *See Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); *Banda v. State*, 890 S.W.2d 42, 50 (Tex. Crim. App. 1994). All of the evidence that the jury was permitted, properly or improperly, to consider must be taken into account in determining the legal sufficiency of the evidence. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); *Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.CAustin 1997, no pet.).

> In resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant=s self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt. See Penal Code ' 2.03(d); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234 (Tex.Cr.App.1989).

*Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

In February or March 2000, appellant met P.L. and on several occasions they smoked crack cocaine in P.L.=s apartment. They established a friendship that soon developed into an active sexual relationship. Appellant testified that on June 21, 2000, he was told that P.L. had an HIV infection. Appellant had worked at a facility where HIV patients were treated and he was familiar with the drugs used in their treatment. Appellant found drugs for the treatment of HIV in P.L.=s closet. Because he had engaged in unprotected sex with P.L., appellant became alarmed. Accompanied by P.L., appellant went to a clinic to obtain HIV tests. However, the clinic was closed

and the next morning when they returned to the clinic it was still closed. They returned to P.L.=s apartment. They were both angry and exchanged profanity and obscene language. Appellant threatened to file criminal charges against P.L. for infecting him and others with HIV. A male friend of P.L., who was present in P.L.=s apartment that afternoon, testified that he heard appellant and P.L. arguing. When the friend departed at about 8:00 p.m., appellant was sitting in front of the apartment drinking beer and P.L. told her friend she was going to lock the door and go to bed.

Appellant testified that P.L. taunted him about having had unprotected sex with him and with other men. Appellant admitted he argued with P.L. about her lack of concern for having unprotected sex. According to appellant, during their argument P.L. reached for a knife but he gained possession of the knife before she did. Appellant then thought he saw P.L. reaching for something shiny and he stabbed her with the knife. Appellant testified that P.L. pulled the knife from her body and chased him out of the apartment. Appellant demonstrated before the jury his version of P.L.=s attack on him and how he acted in self-defense by stabbing her.

Responding to a A911 hang-up call@ from P.L.=s apartment, City of Austin police officers found P.L.=s apartment door partially open, the lights off, and P.L. unconscious lying in a pool of blood on the floor. Emergency rescue personnel were unable to resuscitate P.L.. Blood found on the appellant=s clothing and shoes after he was arrested was determined to be P.L.=s blood.

The Travis County Chief Medical Examiner, Dr. Roberto J. Bayardo, performed the autopsy examination on P.L.=s body. Dr. Bayardo testified that P.L. had three stab wounds in the chest and abdomen and a puncture wound in the right breast. Dr. Bayardo found no defensive wounds and found nothing to indicate that P.L. had struggled. P.L.=s knife wounds were consistent

**3**

with wounds that would have been caused by the knife discovered near her body. Based on the entry angle of the weapon that caused P.L.=s wounds, Dr. Bayardo believed P.L. was stabbed while lying down. He testified that it was possible but unlikely that P.L. was standing when she was stabbed. Dr. Bayardo testified that the cause of P.L.=s death was the stab wound that penetrated her heart and lung.

The jury was instructed on the law of self-defense and instructed to acquit appellant if they believed he had acted in self-defense.[1] The jury=s verdict of guilty was an implicit finding rejecting appellant=s claim of self-defense. Based on the facts and circumstances shown by the evidence and viewing that evidence in the light most favorable to the prosecution, the jury as the

---

[1] The trial court without objection charged the jury on the law of self-defense and in the application paragraph charged:

> Now, therefore, bearing in mind the foregoing definitions and instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, Ronald Hutchins, in the County of Travis, the State of Texas, on or about the 22nd day of June, 2000, did then and there intentionally or knowingly cause the death of [P.L.] by stabbing her on and about the torso with a knife, which knife, in the manner and means of its use or intended use was capable of causing death or serious bodily injury, OR THAT the defendant, Ronald Hutchins did then and there, with intent to cause serious bodily injury to an individual, namely, [P.L.], commit an act clearly dangerous to human life, to-wit: stabbing her on and about the torso with a knife, which knife, in the manner and means of its use or intended use was capable of causing death or serious bodily injury, thereby causing the death of said [P.L.], as alleged in the indictment; but you further find from the evidence, or have a reasonable doubt thereof, that the defendant reasonably believed as viewed from his standpoint alone that deadly force when and to the degree used, if it was, was immediately necessary to protect himself against the use or attempted use of unlawful deadly force by the said [P.L.] or to prevent the imminent commission by the said [P.L.] of murder and that at such time a reasonable person in the defendant=s situation would not have retreated, you will acquit the defendant and say by your verdict Anot guilty.@

4

finder of fact, could rationally find that the essential elements of murder were proved beyond a reasonable doubt and also could rationally find against appellant on the self-defense issue beyond a reasonable doubt. Appellant=s first point of error is overruled.

In his second point of error, appellant urges that the Aevidence is factually insufficient to support the jury=s finding that appellant did not act in self-defense in causing the complainant=s death.@ Appellant concedes that he caused P.L.=s death by stabbing her. However, he contends that a neutral review of all of the evidence will show that the jury=s implied verdict rejecting his claim of self-defense is so contrary to the weight of the evidence as to be clearly wrong and unjust. Appellant argues that his testimony provided the jury with a reasonable explanation of self-defense and that the State failed in its burden of proof to demonstrate that appellant=s actions were not in self-defense.

Appellant testified that his apprehension of P.L.=s attack on him was heightened because she had attacked him from the behind the day before and struck him on the head with a heavy ash tray. However, there was evidence that P.L.=s attack on appellant with the ash tray was prompted by her belief that appellant had been stealing her money. In his rambling, incoherent testimony, appellant described P.L.=s attack on him and his action in self-defense.[2]

---

[2] Appellant testified:

> APam, I=m going to file on you for this.@ When I made that statement, APam, I=m going to file on you for this,@. . . there was a little basket and there I seen a B she reached for it. As she reached for that, that=s when I saw that there was the knife itself there. As she reached, I was B I had moved on up. I had reached also for it, grabbed it before she had a chance to get it all the way. . . .

> And that=s when she said . . . Look at me. I don=t have nothing else to live for. I=ve got that shit, and you=ve got it too.@ And as she said, AYou=ve got it too,@. . .

And she reached down; she came up; and when she came up, she swung; and as she swung, again, like I did say, I had beat her to the knife here. And as she swung, I stuck her. . . .

. . . .

During that time period I was highly angry. I mean, I was angry because I=m hearing this person tell me, AYeah, I=m killing you sexually, and then B and I=m trying to kill you with this knife.@ I was resentful for the fact that she did tell me that she had did me and she had did other people. I was scared B when I see B because after I got hit with that ashtray the day before, when she swung, I was scared that she was going to do me in, and that=s when I swung, . . . .

At that time I weighed 135 pounds and . . . she weighed over 250 pounds. . . .

On cross-examination, appellant testified:

I was the person who used the knife that she was about to use on me, and used it on her, yes.

Like I said, I got the knife. She asked me for it B she was B what she did was she started screaming and hollering about, AI=m ready to die. Look at me. I=m worthless. I have nothing left, and you ain=t got nothing else,@ and she reached down and she was fixing to pick up something. I thought she picked it up, whatever. And when she swung, that=s when the knife hit her in the right side of her chest. She never swung the knife at me.

I said when she reached for that knife, this knife, the only thing I saw on the second reach was something shiny come up. I didn=t know if it was a reflection off of something. I B today I don=t know what it was. All I know is that, just like this ashtray, I never saw it. All I saw was something shine B shine and a swing, and as she was coming down, she was stuck with the knife.

Yes, stabbed her with the knife.

All I remember is one quick fluid motion, and that was going down and coming. And as she was coming, she was lunging forward. And as she lunged forward, I lunged forward also.

Like I said, I left the knife go. And when I let the knife go, Ms. Lloyd pulled the

**6**

knife, as far as I know, out of her, and then she got up off the bed because I had got back. And she got up off the bed, and she was coming at me with the knife in her hand.

This all happened in a split second. This was not an opportunity for me to sit there and observe the scene or anything like that. All of this took place relatively real fast. As we go through the details of this, it seems like, oh, he was there and he did this, but in actuality this happened very fast.

7

The State does not have to present direct evidence to refute self-defense; rather, the State must prove its case beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914; *Montemayor v. State*, 55 S.W.3d at 78, 82 (Tex. App.CAustin 2001, pet. ref=d). In a factual sufficiency review, we are required to give deference to the jury=s verdict and examine all of the evidence impartially, setting aside the jury verdict Aonly if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.@ *Cain v. State*, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). The complete and correct standard a reviewing court must follow to conduct a *Clewis* factual sufficiency review is to determine whether a neutral review of all of the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury=s determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

In determining whether the evidence is factually sufficient to support the jury=s implicit rejection of appellant=s claim of self-defense, we review all of the evidence in an impartial, neutral light on the issue of guilt, and we review all of the evidence probative of the issue of self-defense in an impartial, neutral light to decide whether the finding of guilt and the implicit finding against self-defense are so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Saxton*, 804 S.W.2d at 914; *Montemayor*, 55 S.W.3d at 85; *Vasquez v. State*, 2 S.W.3d 355, 358-59 (Tex. App.CSan Antonio 1999, pet. ref=d); *Reaves v. State*, 970 S.W.3d, 115-18 (Tex. App.CDallas 1998, no pet.).

When a jury=s determination depends primarily on its evaluation of the witnesses= demeanor and credibility, it deserves almost total deference. *Johnson*, 23 S.W.3d at 8-9; *Cain*, 953 S.W.2d at 408-09. Here, the jury=s evaluation of the witnesses= credibility was crucial to its verdict. The jury could have found that appellant=s testimony was inconsistent with the physical facts about which the investigating officers testified and inconsistent with the testimony of the medical examiner. After neutral consideration of all of the evidence, and after giving proper deference to the jury=s verdict, including its implied rejection of the self-defense issue, we conclude that the evidence of appellant=s guilt is not so weak as to undermine confidence in the jury=s determination, nor is the proof of guilt, although adequate if taken alone, greatly outweighed by contrary proof. The evidence, including the evidence supporting the jury=s implied rejection of appellant=s self-defense claim, is factually sufficient to support the jury=s verdict. We overrule appellant=s second point of error.

In his sixth point of error, appellant complains of the jury=s failure to find that he committed the charged offense while under the immediate influence of sudden passion arising from an adequate cause. At the punishment phase of trial, if the jury finds that a defendant committed the offense of murder under the immediate influence of sudden passion arising from an adequate cause, the punishment for that offense is reduced to that of a second degree felony with a maximum punishment of imprisonment for twenty years. Tex. Pen. Code Ann. ' 19.02(d) (West 1994). AThe existence of sudden passion is simply a mitigating factor relevant to punishment, and the burden of proving sudden passion by a preponderance of the evidence during the punishment phase rests on the defendant.@ *Rainey v. State*, 949 S.W.2d 537, 541 (Tex. App.CAustin 1997, pet. ref=d). At the punishment phase of trial, appellant offered no additional evidence. Therefore, the evidence on

**9**

which he relies to prove this mitigating issue is the evidence offered at the guilt-innocence phase of trial, primarily his own testimony. We have already summarized that evidence in our consideration of appellant=s first and second points of error.

Appellant contends that the evidence shows P.L. exposed him to a deadly virus, initially refused to confirm that she had done so, acted with indifference to his welfare, informed him of her unfaithfulness to him, assaulted him with an ashtray, and attempted to grab a deadly weapon during their argument. Appellant argues that P.L.=s provocation was an adequate cause resulting in his acting under the immediate influence of sudden passion. We need not determine whether P.L.=s claimed provocation was the *immediate* cause of appellant=s actions requiring a jury instruction, because the trial court submitted the mitigating charge to the jury.[3]

---

[3] You have found the defendant guilty of Murder and it now becomes your duty to assess punishment. The punishment which you may assess is confinement in the Institutional Division of the Texas Dept. of Criminal Justice for life, or for any term of not more than 99 years or less than 5 years; unless you believe that the defendant caused the death under the immediate influence of a sudden passion arising from an adequate cause in which event you may assess confinement for not more than 20 years or less than 2 years. In addition, in either case, a fine not to exceed $10,000 may be imposed.

The burden of proof is on the defendant to prove this issue by a preponderance of the evidence.

APreponderance of the evidence@ means the greater weight of the credible evidence.

ASudden passion@ means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

AAdequate cause@ means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

Now if you believe by a preponderance of the evidence that the defendant caused the death of the deceased while under the immediate influence of sudden passion arising from an adequate cause, you will assess punishment at confinement for not more than 20 years nor less than 2 years and you may impose a fine not to exceed $10,000.

It now becomes your duty to set the punishment which will be assessed against this defendant.

The jury is the exclusive judge of the credibility of witnesses and the weight to be given their testimony. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). The jury may choose to believe some testimony and disbelieve other testimony. *Margraves*, 34 S.W.3d at 919; *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). Because the jury assessed appellant=s punishment at more than twenty years, the jury implicitly rejected appellant=s claim that he committed the offense while under the immediate influence of sudden passion arising from an adequate cause. When an appellant seeks appellate review of a jury=s finding on which the defense had the burden of proof, the reviewing court must make a factual review of the evidence. *See Dudley v. State*, 992 S.W.2d 565, 567 (Tex. App.CTexarkana 1999, no pet.); *see also Meraz v. State*, 785 S.W.2d 146, 154-55 (Tex. Crim. App. 1990). The standard of review is whether after considering all of the evidence, the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Naasz v. State*, 974 S.W.2d 418, 421 (Tex. App.CDallas 1998, pet. ref=d). Considering all of the relevant evidence and giving proper deference to the jury=s verdict, we find the jury=s verdict is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Appellant=s sixth point of error is overruled.

In his third point of error, appellant insists his right to a fair and impartial jury was violated by allowing courtroom spectators to exhibit a picture of P.L. on buttons they were wearing. Constitutional guarantees accord an accused in a criminal trial the right to be tried by impartial jurors whose verdict is based on the evidence developed at trial rather than by external influences. *See* U.S.

**12**

Const. amend. VI, XIV; *Howard v. State*, 941 S.W.2d 102, 117 (Tex. Crim. App. 1996). To prevail on an appeal claiming reversible error resulting from external juror influence, an appellant must show either actual or inherent harm. *Howard*, 941 S.W.2d at 117. The test for actual influence is whether jurors actually articulated being aware of a prejudicial effect. *Id.* Inherent influence is shown by a reasonable probability that the influence interfered with the jury=s verdict and is a rarity reserved for extreme situations. *Id. See also Nguyen v. State*, 977 S.W.2d 450, 457 (Tex. App.CAustin 1998, pet. granted on other grounds), *aff=d, Nguyen v. State*, 1 S.W.3d 697, 698 (Tex. Crim. App. 1999). There is no assertion or proof of actual influence in the present case. Here, when objection was made, the trial court noted that three people were wearing the button about which the objection was made. The court ruled, AI certainly don=t think three people wearing a badge, which is not very noticeable, is going to put undue presure on the jury. So, I=ll deny that objection.@ The record does not include a detailed description of the buttons or evidence of their actual size. There is no evidence of where the three people wearing the buttons were seated in relation to the jury in the jury box. The record does not show that the court required those wearing the buttons to remove them. In view of the record, appellant has failed to show that this was the rare, extreme situation showing a reasonable probability that would influence the jury in its decision. Point of error three is overruled.

In his fourth point of error, appellant complains that the trial court erred Ain allowing the State=s witnesses to violate Athe rule.@ *See* Tex. R. Evid. 614.[4] When the trial commenced,

---

[4] **RULE 614. EXCLUSION OF WITNESSES**

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of:

**13**

defense counsel asked the court to invoke Athe rule.@ The prosecutor argued that family members who would only testify at the punishment phase of trial concerning the impact resulting from P.L.=s death should be exempt from Athe rule@ under subsection four of Rule 614. The trial court ruled, AIt does seem to me under 614, subsection 4, that that must apply to the family of victims in a murder case.@ The court=s ruling was erroneous. *See Ladd v. State*, 3 S.W.3d 547, 565-66 (Tex. Crim. App. 1999) (parents of murder victim, who were witnesses, not exempt from Athe rule@). However, the record fails to show that any members of P.L.=s family who testified were in violation of Athe rule.@ Immediately following the court=s ruling the court stated:

THE COURT: My understanding is that there were two sets of witnesses that came in contemporaneously. The first set of witnesses have been removed and did not hear any testimony here in the courtroom today are to be called at guilt-innocence. So, it=s not a problem with them.

---

(1) a party who is a natural person or in civil cases the spouse of such natural person;

(2) an officer or employee of a party in a civil case or a defendant in a criminal case that is not a natural person designated as its representative by its attorney;

(3) a person whose presence is shown by a party to be essential to the presentation of the party=s cause; or

(4) the victim in a criminal case, unless the victim is to testify and the court determines that the victim=s testimony would be materially affected if the victim hears other testimony at the trial.

Tex. R. Evid. 614.

14

> The second group of witnesses, they are witnesses who are family members, who are only going to be called to testify at punishment stage concerning the impact upon them. And, so, under the ruling I=ve just now made, I=m making that based on what I=ve stated in the record.

The record does not show what witnesses were in either the Aset@ or the Agroup@ of witnesses to which the court referred.

At the guilt-innocence phase of trial, P.L.=s sisters, Cherrie Harris and Linda Moss, were State=s witnesses and P.L.=s sister, Johnnie Stewart, was a defense witness. At the punishment phase of trial, P.L.=s niece, Kimberly David, and sister, Linda Moss, testified as State=s witnesses. When these witnesses testified there were no objections that Athe rule@ had been violated. Although it is claimed on appeal that these witnesses violated the rule, the record fails to support that claim. Appellant=s fourth point of error is overruled.

In his fifth point of error, appellant contends that the trial court Aerred in excluding evidence of the complainant=s medical condition and actions.@ Appellant sought to have admitted in evidence, as Defendant=s Exhibits Four and Five, P.L.=s medical and social service records relating to P.L.=s treatment for her HIV infection, syphilis, and hepatitis C. Appellant argues that these records were relevant and admissible to show that P.L. was the aggressor and to support his self-defense claim and his claim that he acted under the immediate influence of sudden passion arising from an adequate cause. These records show that P.L. suffered from an uncontrolled HIV infection, hepatitis C, post neurosyphilis, and the treatment she had received for these diseases. These records also show that P.L. reported having unprotected sex with two men other than appellant.

**15**

During trial, while defense counsel was making an informal bill of exception, the trial court inquired about the defense theory justifying the admission of the proffered records. Defense counsel responded, AAgain, the victim-aggressor.@ The trial court ruled the exhibits were inadmissible because they were not relevant, citing ARule 401.@ *See* Tex. R. Evid. 401. Further, the trial court, citing ARule 403,@ ruled the exhibits were excludible because there was a substantial danger of unfair prejudice and that the admission of this cumulative evidence would confuse the issues, mislead the jury, and cause undue delay. *See* Tex. R. Evid. 403. When the trial court excluded these exhibits, there was already substantial evidence in the record and it was uncontroverted that P.L. was suffering from an uncontrolled HIV infection and the last stage of syphilis. It has not been shown that the trial court abused its discretion in excluding the proffered exhibits. Appellant=s fifth point of error is overruled.

The judgment is affirmed.

_____

Carl E. F. Dally, Justice

Before Chief Justice Aboussie, Justices Puryear and Dally[*]

Affirmed

Filed: December 12, 2002

Do Not Publish

* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov=t Code Ann. ' 74.003(b) (West 1998).