Elton Leon POWELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–95–00234–CR.

Court of Appeals of Texas,
El Paso.

Jan. 23, 1997.

Adrian Chavez, Odessa, for Appellant.

John W. Smith, District Attorney, Odessa, for Appellee.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

LARSEN, Justice.

This is an appeal from a conviction for the offense of aggravated assault on a peace officer. The jury convicted the appellant, Elton Leon Powell, and sentenced him to eight years' incarceration in the Texas Department of Criminal Justice—Institutional Division. We affirm.

## FACTS

The complaining witness in this case, Arlen Fisher, is a police officer with the City of Odessa Police Department. On December 11, 1994, Officer Fisher was on his way home after finishing his shift when he noticed a blue Camaro exit a parking lot at a high rate of speed, do an illegal U-turn, and go back to the parking lot. The car was fish-tailing as it moved. Officer Fisher drove his personal

truck into the parking lot behind the Camaro because he suspected the driver was intoxicated. He used his police radio, which he had in his trunk, to notify headquarters that he was stopping a suspected drunk driver. Powell got out of the Camaro and walked back toward Fisher's truck. When Fisher, who was still dressed in his police uniform, asked Powell for his driver's license and proof of insurance, Powell cursed at Fisher and stated that he did not have to show Fisher anything. Fisher perceived that Powell was going to attack him, so he radioed for immediate help. Powell began to walk away, and Fisher ordered him to stop. Powell turned toward Fisher saying, "I don't have to show you shit. You are not a f___ing cop." Fisher testified that Powell turned around and began walking toward a building on the property saying that "he had something for my ass." After Powell ignored several orders to stop, Fisher feared that Powell was going into the building for a weapon. In an attempt to keep Powell from entering the building, Fisher reached around Powell's neck from behind. Fisher does not remember anything that happened after he attempted to stop Powell.

Officer Robert Carpenter answered Fisher's call for assistance. When Carpenter arrived, Fisher was lying on his back on the ground, unconscious. Carpenter saw Powell kick Fisher in the head three times. Powell was standing only a foot or two from Fisher as he lay on the ground, and kicked Fisher with force Carpenter described as "very violent. He was able to raise Officer Fisher's head off the ground and to the left." Carpenter felt that Fisher's life was in danger. He dove at Powell, but Powell pushed him off and to the ground. Powell approached Carpenter with his fist clenched and Carpenter kicked Powell in the chest to drive him back. Carpenter advised Powell that he was under arrest. Powell continued to move toward Carpenter, so Carpenter drew his baton and struck Powell in the thigh. Powell said, "I will fix you mother f___ers," and again went toward the building. Carpenter followed Powell into the building, where Powell was trying to get into a desk drawer. Carpenter drew his gun and ordered Powell to move away from the desk. Another officer, Ser-

geant Hughes, arrived and assisted Carpenter in handcuffing Powell.

After Hughes and Carpenter got Powell into a patrol car, Carpenter went back to Fisher to check his condition. Fisher had regained consciousness, but was dazed, confused, and did not know what had happened. Dr. William Haynes treated Fisher in the emergency room. Dr. Haynes, who had practiced emergency medicine for fifteen years, diagnosed Fisher with a concussion, and told Fisher to stay home from work for a few days. Dr. Haynes testified that blows to the head, depending on the strength or repetitiveness of the blows, are capable of causing serious bodily injury or death. The doctor considered a concussion to be a serious bodily injury because of potential memory loss and other loss of brain function.

## DISCUSSION

Powell challenges his conviction with three points of error. Powell alleges juror misconduct, and legal and factual insufficiency of the evidence to show that Powell's foot was a deadly weapon.

### Juror Misconduct

In his first point of error, Powell alleges the trial court erred in failing to grant his motion for new trial on the ground of juror misconduct. Leroy Brown, the accused juror, and Powell's mother and sister testified at the hearing on motion for new trial. Brown testified that Carolyn Anderson, Powell's sister, approached him during the trial and asked him for his phone number and address. Anderson came to Brown's apartment and offered him $250 "for business." Brown told her that he had no business taking money from the defendant's family. After Brown refused the money, Anderson left the apartment. Brown denied any conversation with Anderson about her brother's trial. A few days later and also during the trial, Powell's mother, Vivian Ferguson, came to Brown's apartment. Ferguson got $150 out of her purse, which Brown accepted, and asked Brown what he knew about the case. At the hearing, Brown produced a fifty dollar bill and a one hundred dollar bill, which he

claimed were the same bills Ferguson gave him. Brown testified that Ferguson was distraught, so he told her that he did not think Powell would go to jail because Powell was trying to defend himself from the police officers. He also testified, however, that he did not promise to vote not guilty, and he "voted guilty from the beginning until the end." He stated that he did not change his vote based on the conversations he had with Anderson and Ferguson. The presiding juror, Fred Sotelo, testified that Brown did not tell the rest of the jurors about his conversations with Powell's family, nor did Brown try to persuade the jury to vote not guilty.

Carolyn Anderson, on the other hand, testified that Brown approached her on the first day of trial. Anderson, who claimed that she did not know Brown was a juror at the time, said that Brown gave her his phone number and told her to call him. When Anderson called Brown, Brown asked her to come to his home. At Brown's apartment, Brown told Anderson that he did not think her brother was guilty. Brown asked Anderson for her phone number, and she gave him her mother's number. She denied offering Brown any money. Vivian Ferguson admitted going to Brown's apartment, but she also denied giving Brown any money, and testified that she refused to give Brown money when he asked for it. Like Anderson, Ferguson claimed that Brown initiated the contact with her. Ferguson affirmed that Brown told her he believed Powell was trying to defend himself.

### Applicable Law

Powell argues that the evidence establishes his right to a new trial pursuant to Texas Rules of Appellate Procedure 30(b)(4), 30(b)(7), and 30(b)(8). TEX.R.APP.P. 30(b) provides, in pertinent part, for a new trial when: the verdict was decided by lot or in any other manner other than by a fair expression of opinion by the jurors; a juror has received a bribe or has been guilty of other corrupt conduct; after retiring the jury received other evidence; a juror conversed with another in regard to the case; a juror was intoxicated; or the court finds the jury has engaged in such misconduct that the

accused has not received a fair and impartial trial. See TEX.R.APP.P. 30(b). Specifically, Powell argues that the evidence presented at the motion for new trial established Brown engaged in "corrupt conduct" resulting in an unfair trial, and conversed with unauthorized persons about the case.

### Standard of Review

■ At a hearing on a motion for new trial, the trial judge is the trier of fact and his or her findings should not be disturbed unless abuse of discretion has been demonstrated. *Tollett v. State*, 799 S.W.2d 256, 259 (Tex.Crim.App.1990); *Keady v. State*, 687 S.W.2d 757, 759 (Tex.Crim.App.1985). Issues of fact as to jury misconduct raised at a hearing on a motion for new trial are for the determination of the trial judge, and where there is conflicting evidence, there is no abuse of discretion where the motion for new trial is overruled. *Tollett*, 799 S.W.2d at 259; *Sneed v. State*, 670 S.W.2d 262, 266 (Tex. Crim.App.1984). Given the testimony in this case, we cannot say that the trial court abused its discretion.

### Corrupt Conduct Resulting in an Unfair Trial

■ The evidence does not show that Brown received a bribe to convict. Rather, Brown admitted accepting what appears to have been intended as a bribe to acquit. Although we certainly condemn any juror engaging in conversations with and accepting money from a defendant's family under any circumstances, there is evidence in this case from which the trial court could determine that Brown's behavior was induced by Anderson and Ferguson and harmless to Powell. The trial court was free to, and apparently did, believe Brown's testimony rather than that of Ferguson and Anderson. Brown's conduct, although clearly contrary to the instructions he received as a juror, did not necessarily corrupt the process of the trial against Powell. Significantly, Brown testified that neither Anderson nor Ferguson influenced his decision one way or the other. Affording due deference to the trial court, we do not find that it abused its discretion in refusing to grant Powell a new trial on the

basis of Brown's "corrupt" conduct, particularly in light of evidence tending to show that Ferguson and Anderson attempted, but failed, to initiate the corruption in favor of Powell.

### Unauthorized Discussions

 It is undisputed that Brown discussed the case, at least in general terms, with Ferguson. New trials shall be granted the defendant where a juror has conversed with any person in regard to the case. TEX. CODE CRIM.PROC.ANN. art. 40.03(7) (Vernon 1979). If a juror converses with any unauthorized person about a case, injury to the accused is presumed. *McMahon v. State,* 582 S.W.2d 786, 793 (Tex.Crim.App.1978) (en banc), *cert. denied,* 444 U.S. 919, 100 S.Ct. 238, 62 L.Ed.2d 175 (1979). This presumption, however, is rebuttable. If it is shown that the case was not discussed, or that nothing prejudicial to the accused was said, then the verdict will be upheld. *Chambliss v. State,* 633 S.W.2d 678, 682 (Tex.App.—El Paso 1982), *affirmed on other grounds,* 647 S.W.2d 257 (Tex.Crim.App.1983) (en banc). In this case, the evidence establishes that Anderson and Ferguson did not relate any prejudicial information to Brown. Powell contends, however, that his mother's and sister's alleged attempts to bribe Brown could have prejudiced Brown's impression of him. The unauthorized discussions, he argues, therefore were harmful to him. We reject Powell's contention. We believe that a defendant should not be allowed to profit by attempting to bribe, or otherwise corrupt a juror. The defendant, or someone working on his behalf, cannot create reversible error in this way. We do not find that the trial court abused its discretion in determining that the unauthorized discussions did not injure Powell.

Accordingly, we overrule Powell's first point of error.

### Sufficiency of the Evidence to Support Deadly Weapon Finding

 In his second and third points, Powell challenges the legal and factual sufficiency of the evidence to support the jury's finding that Powell's foot was a deadly weapon. The State alleged Powell "intentionally and knowingly cause[d] bodily injury to Arlen Fisher and in the commission of doing so, used or exhibited a deadly weapon, to-wit, a shod foot, by kicking Arlen Fisher in the head with same, which was then and there in the manner of its use and intended use, capable of causing serious bodily injury or death. . . ." The Penal Code defines a deadly weapon as anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX.PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon 1994). A foot is not a deadly weapon per se, but it can become a deadly weapon if in the manner of use, the foot is capable of causing death or serious bodily injury. *See Clark v. State,* 886 S.W.2d 844, 845 (Tex.App.—Eastland 1994, no pet.) (evidence supported finding feet used as deadly weapons where defendant struck and kicked two-year old child in manner capable of causing death); *Hilla v. State,* 832 S.W.2d 773, 779 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd) (evidence supported finding that victim's death caused by kicks from defendant's foot). An object is subject to an affirmative finding of a deadly weapon only when it is actually used in such a way as to cause death or serious bodily injury. In other words, an object is a deadly weapon under section 1.07(a)(17)(B) when it is actually used in a manner which causes, or has the potential to cause, death or serious bodily injury. *Hill v. State,* 913 S.W.2d 581, 591 (Tex.Crim.App.1996). Consequently, the State was required to show beyond a reasonable doubt that Powell's foot, in the manner of its use, was capable of causing death or serious bodily injury to Fisher.

### Legal and Factual Sufficiency Standards of Review

In passing on legal sufficiency of the evidence, we determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318, 319, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State,* 820 S.W.2d 154, 159 (Tex.Crim.App.1991). We do not resolve conflicts of fact or assign credibility to witnesses, as it was the function of the trier of

fact to accept or reject any, part, or all of any witness's testimony. *See Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992) (en banc); *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Our duty, rather, is to determine only if the explicit and implicit findings of the trier of fact are rational by viewing all the evidence in a light most favorable to the verdict. *Adelman,* 828 S.W.2d at 421–22. In so doing, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson,* 819 S.W.2d at 843, *quoting Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim.App.1988).

■■■ In reviewing factual sufficiency, this court considers all of the evidence, but does not view it in the light most favorable to the verdict. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). We will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* "Insufficient evidence" or factual insufficiency involves a finding that is so against the great weight and preponderance of the evidence as to be manifestly wrong. In reviewing a point of error asserting that a finding is against the great weight and preponderance of the evidence, the appellate court must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. If the verdict is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained. In other words, if there is sufficient competent evidence of probative force to support the finding, a factual sufficiency challenge cannot succeed. *Taylor v. State,* 921 S.W.2d 740, 745 (Tex.App.—El Paso 1996, no pet.). This is true even if the finding is supported by no more than a scintilla of evidence and even though reasonable minds might differ as to the conclusions to be drawn from the evidence.

The realm of insufficient evidence exists in an area where there is some evidence of a fact in issue, sufficient that a jury question is warranted, but the evidence will not support a finding in favor of the proponent of that fact in issue. The parlance used by the courts of appeals is that such a finding "shocks the conscience" or that it is "manifestly unjust" limited by such phrases as "the jury's determination is usually regarded as conclusive when the evidence is conflicting," "we cannot substitute our conclusions for those of the jury," and "it is the province of the jury to pass on the weight or credibility of a witness's testimony." *Id.* at 746.

■■■ In conducting a factual sufficiency review, the reviewing court cannot substitute its conclusions for those of the jury. It is not within the province of this court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Id.* Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Id.*

### The Standards Applied to the Facts of this Case

■■■ In this case, the evidence is sufficient to show not only that Powell's foot was capable of causing serious bodily injury, but that it actually caused serious bodily injury to Fisher. Officer Carpenter testified that he observed Powell violently kicking Fisher in the head with enough force to raise Fisher's head off of the ground. Carpenter feared for Fisher's life as he observed the kicking. Dr. Haynes testified that blows to the head, depending on the strength or repetitiveness of the blows, are capable of causing serious bodily injury or death. Dr. Haynes confirmed that Fisher suffered a concussion, an injury he considered to be serious bodily injury in part because of potential memory loss. At trial, Officer Fisher testified that he still could not recall events occurring after he attempted to stop Powell from entering the building. The Penal Code defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX.PENAL CODE ANN. § 1.07(a)(46) (Vernon 1994). Thus, the evidence regarding Fisher's injury, particularly Dr. Haynes's expert assessment of concussion as serious bodily injury and Fisher's loss of memory func-

tion, is consistent with the Texas Penal Code definition of serious bodily injury.

The evidence presented at trial is such that a rational trier of fact could reasonably conclude that Powell kicked Fisher in the head with sufficient force to cause concussion, a serious bodily injury. Further, the only contradictory evidence presented at trial was Powell's wife's testimony that Powell did not strike Fisher in the head at all. We do not find the controverting evidence in this case to be of such weight that the jury's verdict to the contrary appears to be manifestly unjust or shocks our conscience. Applying the appropriate standards of review, we have considered all of the evidence in the record, including that contrary to the verdict. We find the evidence both legally and factually sufficient to support the jury's verdict. Accordingly, we overrule Powell's second and third points of error.

### CONCLUSION

Having considered and overruled each of Powell's three points of error, we affirm the judgment of the trial court.