ACCEPTED
07-15-00180-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
11/9/2015 11:10:16 PM
Vivian Long, Clerk

No. 07-15-00180-CR

In The

# Court of Appeals
# Seventh District of Texas

Amarillo, Texas

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
11/9/2015 11:10:16 PM
VIVIAN LONG
CLERK

**WILLIAM COLLINS,**

*Appellant,*

*- - -versus- - -*

**THE STATE OF TEXAS,**

*Appellee.*

On Appeal from Cause No. 2013-400,381
In the 364th Judicial District Court of Lubbock County, Texas
The Honorable William R. Eichman Presiding

## APPELLANT'S OPENING BRIEF ON THE MERITS

Allison Clayton
State Bar No. 24059587
Law Office of Allison Clayton
P.O. Box 64752
Lubbock, Texas 79464
(806) 773-6889
Fax (888) 688-4515
Allison@AllisonClaytonLaw.com

*Attorney for Appellant*

ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to TEX. R. APP. P. 38.1(a), the following is a complete list of the names of the parties and their counsel.

| PARTIES | COUNSEL |
|---------|---------|
| **WILLIAM COLLINS**<br>Defendant / Appellant | Trial Counsel<br>Matthew Hawkins<br>Shackelford, Hawkins & Associates<br>1402 Texas Avenue<br>Lubbock, Texas 79401<br><br>Appellate Counsel<br>Allison Clayton<br>The Law Office of<br>B. Allison Clayton<br>P.O. Box 64752<br>Lubbock, Texas 79464-4752 |
| **THE STATE OF TEXAS**<br>Prosecution / Appellee | Trial Counsel<br>Sean Long<br>Aaron Moncibaiz<br>Assistant District Attorneys<br>P.O. Box 10536<br>Lubbock, Texas 79408-3536<br><br>Appellate Counsel<br>Jeffrey S. Ford<br>Assistant District Attorney<br>P.O. Box 10536<br>Lubbock, Texas 79408-3536 |

## TABLE OF CONTENTS

Identity of Parties and Counsel ...................................................................... i

Table of Contents ....................................................................................... ii

Index of Authorities ................................................................................... iii

Statement of the Case ................................................................................ vi

Issues Presented ....................................................................................... vii

Statement of Facts ...................................................................................... 2

Summary of the Argument ............................................................................ 9

Argument ................................................................................................ 10

I.    THE EVIDENCE IS INSUFFICIENT TO SUPPORT THE JURY'S FINDING THAT
BILL ACTED IN RETALIATION .......................................................... 10

    A.    Determining the Sufficiency of the Evidence
Establishing Retaliatory Intent .............................................. 10

    B.    The Evidence is Insufficient to Establish Bill
Acted with Retaliatory Intent ................................................ 13
        1.   The Evidence Failed to Establish Bill Knew Olda
Reported Him to be the Robber ..................................... 13
        2.   The Evidence Failed to Establish Bill Robbed Juan .......... 15
        3.   The Evidence Otherwise Failed to
Prove Retaliatory Intent ............................................... 16

II.    THE EVIDENCE IS INSUFFICIENT TO SUPPORT THE JURY'S FINDING THAT
BILL USED A DEADLY WEAPON .......................................................17

Prayer .................................................................................................... 22

Certificates ............................................................................................. 23

# INDEX OF AUTHORITIES
## CASES

*Brooks v. State,*
   323 S.W.3d 893 (Tex. Crim. App. 2010) ...................................................... 10

*Brown v. State,*
   No. AP-77,019, 2015 WL 5453765 (Tex. Crim. App. Sept. 16, 2015)...... 11, 14

*Cada v. State,*
   334 S.W.3d 766 (Tex. Crim. App. 2011) ...................................................... 10

*Carlson v. State,*
   940 S.W.2d 776 (Tex. App.—Austin 1997, pet. ref'd) ................................. 19

*Clark v. State,*
   886 S.W.2d 844 (Tex. App.—Eastland 1994, no pet.) ................................. 20

*Denham v. State,*
   574 S.W.2d 129 (Tex. Crim. App. 1978) ...................................................... 17

*Garcia v. State,*
   919 S.W.2d 370 (Tex. Crim. App. 1994) ...................................................... 10

*Gibson v. State,*
   Nos. 07-13-00412-CR, 07-13-00413-CR, 2014 WL 4197529
   (Tex. App.—Amarillo Aug. 25, 2014, pet. ref'd) .......................................... 18

*Guevara v. State,*
   152 S.W.3d 45 (Tex. Crim. App. 2004) ........................................................ 11

*Helleson v. State,*
   5 S.W.3d 393 (Tex. App.—Fort Worth 1999, pet. ref'd) ........................ 12, 14

*Hemphill v. State,*
   No. 08-03-00054-CR, 2004 WL 722247
   (Tex. App.—El Paso Apr. 1, 2004, pet. ref'd) ......................................... 18, 20

## INDEX OF AUTHORITIES

### CASES

*Herrera v. State,*
915 S.W.2d 94 (Tex. App.—San Antonio 1996, no pet.) ............................ 12

*In re B.P.H.,*
83 S.W.3d 400 (Tex. App.—Fort Worth 2002, no pet.) ............................ 12

*In re E.P.,*
257 S.W.3d 523 (Tex. App.—Dallas 2008, no pet.) ............................... 16, 17

*In re K.H.,*
169 S.W.3d 459 (Tex. App.—Texarkana 2005, no pet.) ............................ 15

*Jackson v. Virginia,*
443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) .................................. 10

*Lane v. State,*
151 S.W.3d 188 (Tex. Crim. App. 2004) ..................................................... 19

*Moore v. State,*
No. 10-08-00211-CR, 2009 WL 1886450
(Tex. App.—Waco July 1, 2009, pet. ref'd) .............................................. 18

*Ortiz v. State,*
93 S.W.3d 79 (Tex. Crim. App. 2002) ......................................................... 14

*Powell v. State,*
939 S.W.2d 713 (Tex. App.—El Paso 1997, no pet.) .................................. 19

*Raybon v. State,*
No. 02-12-00071-CR, 2013 WL 4129126
(Tex. App.—Fort Worth Aug. 15, 2013, pet. dsms'd) ................................ 12

*Riley v. State,*
965 S.W.2d 1 (Tex. App.—Houston [1st Dist.], pet. ref'd) ...................passim

*Thomas v. State,*
821 S.W.2d 616 (Tex. Crim. App. 1991) .................................................... 18

# INDEX OF AUTHORITIES
## CASES

*Tucker v. State,*
274 S.W.3d 688 (Tex. Crim. App. 2008) ...................................................... 17

*Turner v. State,*
664 S.W.2d 86 (Tex. Crim. App. 1983) .................................................. 18, 21

*Villarreal v. State,*
255 S.W.3d 205 (Tex. App.—Waco 2008, no pet.) ................................. 18, 21

*Winfrey v. State,*
393 S.W.3d 763 (Tex. Crim. App. 2013) ...................................................... 16

## STATUTES

TEX. GOV'T CODE ANN. § 311.023 ................................................................ 11

TEX. PEN. CODE ANN. § 1.07(17)(B) ............................................................ 17

TEX. PEN. CODE ANN. § 12.42(d) .................................................................. vi

TEX. PEN. CODE ANN. § 22.02(b)(2)(C) ................................................... vi, 11

TEX. R. APP. P. 38.1(a) ................................................................................... i

## STATEMENT OF THE CASE

| | |
|---|---|
| Nature of the Case | This is an appeal from a conviction for aggravated assault-retaliation and the resultant ninety-nine-year sentence. |
| Trial Court | The Honorable William Eichman, presiding judge of the 364th Judicial District Court of Lubbock County, Texas. |
| Course of the Proceedings *and* The Trial Court's Disposition of the Case | On April 1, 2015, a jury convicted Appellant William Collins of the first-degree felony of aggravated assault, done with a deadly weapon (Appellant's foot) and done in retaliation. TEX. PEN. CODE ANN. § 22.02(b)(2)(C); (6 RR 147; CR 67).[1] Mr. Collins pled true to two prior felony convictions, and the jury assessed his punishment at confinement for a term of ninety-nine years. TEX. PEN. CODE ANN. § 12.42(d); (7 RR 42,78). Appellant filed a Motion for New Trial on April 6, 2015, followed by a Notice of Appeal on April 22, 2015. |

---

[1] The record in this case consists of one volume of the Clerk's Record and ten volumes of the Reporter's Record. Throughout this brief, the Clerk's Record is cited as "CR" followed by the pertinent page number. The Reporter's Record is cited as "RR," with the volume of the record preceding "RR" and the pertinent page number of the record following "RR." For example, "6 RR 149" references the sixth volume of the Reporter's Record at page 149.

# ISSUES PRESENTED

## I.

Is the evidence establishing Appellant acted in retaliation insufficient?

## II.

Is the evidence establishing Appellant used a deadly weapon during the course of an assault insufficient?

No. 07-15-00180-CR

In The

# Court of Appeals
# Seventh District of Texas

Amarillo, Texas

═══════════════════

**WILLIAM COLLINS,**

*Appellant,*


- - -*versus*- - -


**THE STATE OF TEXAS,**

*Appellee.*

═══════════════════


On Appeal from Cause No. 2013-400,381
In the 364th Judicial District Court of Lubbock County, Texas
The Honorable William R. Eichman Presiding

═══════════════════


## APPELLANT'S OPENING BRIEF ON THE MERITS


═══════════════════


TO THE HONORABLE COURT OF APPEALS:

WILLIAM COLLINS, Appellant in docket number 07-15-00180-CR, submits this Opening Brief on the Merits in support of his request to reverse the Judgment entered in cause number 2013-400,381 out of the 364th Judicial District Court and remand the case for further proceedings in the court below.

## STATEMENT OF FACTS

Juan Bazaldua was putting up groceries in his apartment when, out of nowhere, an unknown assailant attacked him. (5 RR 10). The assailant, using Juan's own cane, hit Juan in the back and waist before taking Juan's money and running away. (*Id.*). Juan did not know his attacker; he had never seen him before that day. (*Id.* 13, 17). All Juan knew was the attacker was wearing a red shirt with matching red pants.[2] (*Id.* 18).

Even though Juan could have recognized the attacker (*id.* 13), police never provided Juan with a photo lineup (*id.* 22). In fact, the police never contacted Juan in an effort to take his statement or otherwise investigate Juan's recollection of the incident. (*Id.* 22-23).

After the attacker left, Juan went outside for help. (*Id.* 19). Juan's neighbor, Olda Dean Lewis, was just coming out of the shower. (*Id.* 211). Even though he had not seen anything relating to the robbery, when Olda Dean saw Juan he knew something was wrong. (*Id.* 211; 216-17). Olda Dean went outside to see if he could help Juan. (*Id.*).

---

[2] Video surveillance at Juan's apartment complex recorded a person dressed in all red running away from the area of Juan's apartment at about the time of the robbery. (State's Ex. 4). Unfortunately, the recording is very pixilated. It is impossible to glean much about the assailant from the video, other than the person was wearing all red. (State's Ex. 4 at 0:20-0:31, 1:22-1:28).

Because he speaks broken English, Juan had difficulty communicating with Olda Dean about what had just happened. (*Id.* 19). Olda Dean managed to figure out the gist of what Juan was trying to convey, even though Juan himself "didn't know what to say or how to say it." (*Id.* 19). When Olda Dean asked who the attacker was, Juan got out a notepad and pointed to a red mark on the pad. (*Id.* 211). Juan told Olda Dean, "this color, clothes." (*Id.*).

Earlier that day, Olda Dean had visited with William "Bill" Collins. (*Id.* 210). When Juan indicated red was "this color, clothes," Olda Dean recalled "that morning [Bill] had on some red." (*Id.* 211). At that point, Olda Dean "knew" it was Bill. (*Id.*). Olda Dean's moment of revelation actually came during his 911 call. After Juan communicated the attacker was wearing red, Olda Dean said, "ok, he said the dude had red. I know who he is . . . He had all red on. Red top, red bottom." (State's Ex. 1 4:00-4:15). The operator then asked whether the attacker was Black, White, or Hispanic. (*Id.* at 4:15). Without hesitation or pausing to check with Juan, Olda Dean replies, "He's Black." (*Id.* 4:18). Olda Dean went on to explain, "I know who he is. They call him Honey." (*Id.* 4:33). Olda Dean did not personally see any part of the incident. (5 RR 216-17). He concluded because he had not seen anyone else wearing red that day, it must have been "Honey." (*Id.* 217).

Olda Dean told police "everything [he] knew." (*Id.* 217). Police took the alias "Honey" and put it into the police department's name database, which is a compilation of known aliases and other contact information of included persons. (*Id.* 68-69). The database only contained one file with the moniker "Honey" – the file for Bill Collins, who goes by "Honey Nut." (*Id.* 69, 133; State's Ex. 7 7:30). Consequently, the police turned their investigation to Bill.

When he knew the police were wanting to speak with him, Bill called the investigating officer, Thomas Prumer. During that phone call, Bill admitted he was in the area at the time of the robbery and had run when he saw the assailant running. (State's Ex. 7 1:44-1:47). Bill said on the day of the robbery, he was wearing a blue and red shirt with turquoise and yellow shorts (clearly not one for fashion). (*Id.* 3:42; 5:21-:26). Bill explained Juan has known Bill since Bill was a child. (*Id.* 2:27). Bill told Prumer to contact Juan, and Juan would verify Bill was not his attacker. (*Id.* 2:36, 8:05).

Prumer did not reach out to Juan. (5 RR 22-23). Instead, Prumer asked Bill to come to the police station and submit himself to interrogation. Bill did as the officer requested, setting up a time for the interview, showing up, and answering Prumer's questions for almost a full hour. (State's Ex. 8).

During the interview, Bill said he had seen "Honey Pie" running from Juan's apartment at the time of the robbery.[3] (*Id.* 6:47). Honey Pie had on a red Dickey suit. (*Id.* 4:15). Bill again urged Prumer to bring Juan in, as he was confident Juan could clear his name. (*Id.* 19:23, 22:00, 26:16, 32:10). Bill even offered to stand in a lineup. (*Id.* 4:04).

In response to Bill's pleas that Prumer actually speak with the victim, Prumer said he had contacted Juan, and Juan said Bill was the robber. (*Id.* 32:00). Prumer had not contacted Juan. (5 RR 129). Even in the face of Prumer repeatedly saying Juan had implicated Bill, Bill steadfastly maintained Juan knew Bill, and he would verify Bill was not the attacker. (State's Ex. 8, 32:48, 34:13, 34:18, 38:14, 38:18, 38:22, 38:26, 52:01).

Prumer also told Bill "numerous people" and "everyone" was saying Bill had attacked Juan. This, again, was not true. (5 RR 130). In the face of Prumer's repeated attacks, based on blatantly incorrect statements, Bill held his ground, whimpering repeatedly that it was not him. (State's Ex. 8 27:57, 28:34, 38:38, 39:14, 40:58, 42:00, 43:48). Prumer's case against Bill was built solely on the statements of a man who did not even witness the attack. (5 RR 131).

---

[3] Another resident at the apartment complex, Lee Hall, described for Prumer a "Honey Pie" who was wearing a red outfit. (5 RR 120). Prumer never asked Mr. Hall about "Honey Nut." (*Id.* 122). He did not show Mr. Hall a picture of Bill to see if Mr. Hall recognized Bill. (*Id.*).

It was not until trial that Juan was asked who robbed him. Juan testified he would recognize his attacker. (5 RR 13). The following then occurred:

> Q. Can you see all of the different people in the courtroom today?
>
> A. Oh, yeah.
>
> Q. Do you see the man who was in your apartment in the courtroom today?
>
> A. I don't see him.

(*Id.* 13-14). The prosecution, testing Juan's vision then asked,

> Q. Can you see all the people? Can you see me?
>
> A. Yeah.
>
> Q. Can you see my face clearly?
>
> A. Yes.

(*Id.* 14). The court then excused the jury and allowed Juan "*to walk around the courtroom . . . [and] look at everybody.*" (*Id.* 15 (emphasis added)). Juan did as the court asked. (*Id.* 16). The following then occurred:

> THE COURT: Did you get a chance to see everybody clearly?
>
> THE WITNESS: Yeah.
>
> THE COURT: Okay. And did you see the guy who was in your apartment that night?
>
> THE WITNESS: Huh-uh.

(*Id.* 16).

Ten days after Juan was robbed, Bill and Olda Dean got into a fight. Olda Dean was intoxicated, however, and the fight was short and very one-sided. Video surveillance, which again is so pixilated it is impossible to make out the identities of the people involved, showed one person going up to another person. (State's Ex. 6 15:54). Observers said it was "Honey Nut" (which is Bill's nickname) who went up to Olda Dean and instigated the fight. (5 RR 149, 155).

The video shows Bill somehow struck Olda Dean, though there is no evidence he used a closed fist (in a punch) rather than an open hand (in a slap). (*Id.*; 6 RR 91). In any event, something happened and Olda Dean went down to the ground. (State's Ex. 6 16:07). As Olda Dean was on the ground, Bill struck him two to three times with one of his feet. (*Id.* 16:17, 16:33; 6 RR 83-84). Evidence established Olda Dean suffered a 2 centimeter cut on the back of the his head, which required three staples, and a busted lip as a result of the incident. (5 RR 153; State's Ex. 23 at 18).

Bill went to the police station and admitted he had assaulted Olda Dean. (State's Ex. 24). Bill explained the two did not get along because they "mess with the same girl." (*Id.* 1:27, 2:02). He confessed to hitting Olda Dean once with his open hand (*id.* 5:42, 5:43, 5:58) and then kicking him in the face. ( *Id.* 5:42-:45, 5:58, 6:02-:06).

The State charged Bill with aggravated assault for causing bodily injury to Olda Dean by using a deadly weapon, i.e. his foot. The State also asserted Bill assaulted Olda Dean because Olda Dean had reported the robbery.

Police suspected Bill's retaliatory intent because the assault occurred the same day police interrogated Bill about the robbery. During the interrogation, the officer asked Bill who he routinely saw at the apartment complex. (State's Ex. 8 11:54, 12:32). Bill began detailing some of the people he saw at the complex. (*Id.* 11:54-12:38). *In this context*, the officer asked, "do you know Olda?" (*Id.* 12:39). Bill responded he did not. (*Id.* 12:40). The officer then said, "Olda Lewis?" (*Id.* 12:43). Bill again indicated he did not know Olda. (*Id.* 12:44). Olda Dean later testified he goes by Olda or by Dean. (6 RR 23). No one ever asked Bill if he knew Dean. (5 RR 123). In fact, when Bill was later discussing the assault he said he assaulted Dean. (State's Ex. 24 2:10). Several minutes later in the interview, Prumer shifted gears from finding out what Bill saw that day to directly accusing Bill of being the robber. (State's Ex. 8 *compare* 12:43 *and* 19:16). Police never told Bill that Olda Dean had implicated Bill in robbing Juan. Even if they had, they used a name Bill did not recognize.

The jury found Bill guilty of aggravated assault-retaliation. They then sentenced him to serve ninety-nine years in prison. The instant appeal follows.

# SUMMARY OF THE ARGUMENT

A jury sentenced Bill Collins to ninety-nine years' incarceration over a busted lip and a cut two centimeters (approximately ¾ of an inch) long.

The jury found Bill robbed Juan Bazaldua and then assaulted Olda Dean Lewis when he found out Olda reported the robbery and Bill to the authorities. The evidence, however, is insufficient to establish the assault was in retaliation for Olda's report. First, the evidence did not show Bill even knew Olda had reported him to the police as the robber. Moreover, Juan's testimony at trial established Bill *was not* the person who robbed him.

The jury also found Bill used his foot as a deadly weapon when he assaulted Olda. The evidence is not sufficient to support the jury's determination. The evidence only showed Bill used his foot to kick Olda. A foot is not a deadly weapon, per se. Without some additional evidence establishing how the foot could have constituted a deadly weapon, the jury's determination is insupportable. The State failed to offer any evidence about the size difference between Bill and Olda or Bill's strength. There was no expert testimony about how Bill's particular use of his foot on Olda elevated the assault to one involving a deadly weapon. Viewing all the record evidence, the jury's deadly weapon determination is not supported by sufficient evidence.

## I. THE EVIDENCE IS INSUFFICIENT TO SUPPORT THE JURY'S FINDING THAT BILL ACTED IN RETALIATION

### A. Determining the Sufficiency of the Evidence Establishing Retaliatory Intent

Due process demands the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 317-18, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *Cada v. State*, 334 S.W.3d 766, 773-74 (Tex. Crim. App. 2011). If the evidence was insufficient to support the jury's verdict, it cannot stand. *Jackson*, 443 U.S. at 317-18, 99 S.Ct. at 2788.

In determining whether the evidence is sufficient to support a finding of guilt, the reviewing court should evaluate all of the record evidence in the light most favorable to the verdict and determine whether the factfinder was "rationally justified in finding guilt beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010); s*ee Jackson*, 443 U.S. at 318, 99 S.Ct. at 2788. This standard applies to a review of a jury's findings on punishment issues. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994). This standard "gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct.

at 2789. "If, given all of the evidence, a rational jury would *necessarily* entertain a reasonable doubt as to the defendant's guilt, the due process guarantee requires that we reverse and order a judgment of acquittal." *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (emphasis in original).

Section 22.02(b)(2)(C) of the Texas Penal Code establishes the following are the pertinent elements of aggravated assault-retaliation: The person

(1) intentionally, knowingly, or recklessly causes bodily injury to another

(2) using a deadly weapon

(3) in retaliation against a prospective witness to or who has reported the occurrence of a crime.

TEX. PEN. CODE ANN. § 22.02(b)(2)(C). Retaliation is not defined in Section 22.02. *See id.* It is, however, discussed as an independent offense in Section 36.06 of the Penal Code. *See id.* § 36.06*; see Brown v. State*, No. AP-77,019, 2015 WL 5453765 (Tex. Crim. App. Sept. 16, 2015) (looking to Section 36.06 in the case of an offense under Section 19.03(a)(2), murder in the course of retaliation). That provision establishes a person commits the offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for the person reporting a crime. *Id.*; *see* TEX. GOV'T CODE ANN. § 311.023 (stating in construing a statute a court may consider laws on the same or similar subjects).

It is not sufficient for the State to merely prove the assault temporally followed report of the crime. *See Raybon v. State*, No. 02-12-00071-CR, 2013 WL 4129126 at *4 (Tex. App.—Fort Worth Aug. 15, 2013, pet. dsms'd). Rather, the law requires the State to prove "the unlawful act was committed in retaliation for, or on account of, another person's service . . ." *Riley v. State*, 965 S.W.2d 1, 2 (Tex. App.—Houston [1st Dist.], pet. ref'd); *see Helleson v. State*, 5 S.W.3d 393, 395 (Tex. App.—Fort Worth 1999, pet. ref'd) (establishing "[t]o support a conviction for the offense of retaliation, the evidence must establish the retributory element found in section 36.06(a)(1), i.e., that the unlawful act was committed in retaliation for or on account of another person's service as a public servant").

Stated differently, "[r]etaliation is a result oriented offense and the focus is on whether the conduct is done with an intent to effect the result specified in the statute." *In re B.P.H.*, 83 S.W.3d 400, 407 (Tex. App.—Fort Worth 2002, no pet.). That is, did the defendant engage in the action with the intent to harm another *because* that person reported a crime or might later become a witness against him. *See id.*; *Herrera v. State*, 915 S.W.2d 94, 98 (Tex. App.—San Antonio 1996, no pet.).

**B. The Evidence is Insufficient to Establish Bill Acted with Retaliatory Intent**

Bill assaulted Olda. He has never denied the assault. The question for the Court, however, is whether the assault was because of Olda reporting the robbery or because of a different, non-retaliatory reason. The answer to that question involves determining Bill's state of mind at the time he assaulted Olda.

*1. The Evidence Failed to Establish Bill Knew Olda
Reported Him to be the Robber*

As an initial matter, the State failed to establish Bill knew Olda had reported Bill to be the robber. Evidence at trial showed Bill knew Juan came out of his apartment after the assault and went to his neighbor's (Olda's) apartment. (State's Ex. 8 2:08). Bill assumed, "I guess the guy next door called the police or whatever." (*Id*. 2:13). Bill never indicated, however, that he knew Olda implicated him in the robbery during that call.

Detective Prumer did ask if Bill knew Olda Lewis. He did so, however, in the context of Bill detailing everyone he knew at the complex, not in the context of Olda inculpating Bill as the robber. Moreover, there was no evidence to establish Bill knew Olda as "Olda" and not "Dean," a name Olda also went by. So if Prumer's statement could have somehow tipped off Bill that Olda said Bill was the robber, there is no evidence establishing Bill understood "Olda" to be the man he knew as "Dean."

Bill would otherwise have no reason to conclude Olda implicated him in the robbery. Olda did not see the robbery. Bill steadfastly contended Juan (the robbery victim) would say Bill was not the robber. Therefore, Bill would have no grounds upon which to conclude Olda would implicate him in the phone call to the police.

There is simply insufficient evidence indicating Bill knew Olda inculpated him. Without that requisite knowledge, there can be no retaliation. *See Helleson*, 5 S.W.3d at 395; *Riley*, 965 S.W.2d at 2. Unless he knew Olda said "Bill was the robber," Bill would have no reason to retaliate against him. *See Ortiz v. State*, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002)(holding evidence supporting retaliation finding sufficient where the defendant and witness had committed crime together and therefore, without a doubt, the defendant knew the witness had knowledge of defendant's participation in a crime); *Brown v. State*, 2015 WL 5453765 at *7 (holding evidence sufficient to support retaliation where defendant stated several times he knew the declarant had called the police). Because there is no evidence indicating Bill knew or should have known Olda made any such statement, the evidence is insufficient to support the retaliation element.

## 2. The Evidence Failed to Establish Bill Robbed Juan

If Bill did not rob Juan, then there would likewise be no cause for him to retaliate against Olda. Olda was not a witness to the robbery. (5 RR 216-17). Juan was. (*Id.* 13). Bill was confident Juan would say Bill was not the robber. (State's Ex. 8 19:23, 26:16, 32:10, 32:48, 34:13, 34:18, 35:18, 38:22, 38:26, 52:01). Juan was never asked to look at Bill before trial and verify Bill was the robber. (5 RR 22-23). At trial, when he finally got the opportunity to voice his recollection, Juan essentially said Bill was not the robber – just as Bill had foretold. (*Id.* 13-16).

If Bill did not rob Juan, then Bill would not have any reason to retaliate against Olda for calling 911. The only evidence indicating Bill was the one who robbed Juan was Olda's testimony that Bill was wearing red the day of the robbery, which was the same color worn by the robber. Such a broad description, however, is a far cry from establishing with any degree of certainty that Bill and the robber were one and the same. This tenuous link breaks altogether when the robbery victim himself indicated Bill was not the robber.[4]

---

[4] The retaliation statute admittedly does not expressly require the defendant to have committed the underlying crime. *See In re K.H.*, 169 S.W.3d 459, 464 (Tex. App.—Texarkana 2005, no pet.)(holding Section 36.06 requires the State to prove the defendant had actually committed a crime in a case where the underlying action was not technically illegal). The statute makes no sense, however, if it can apply to an innocent person, for why would an innocent person care if someone reports a crime.

### 3. The Evidence Otherwise Failed to Prove Retaliatory Intent

Immediately before the assault, Olda heard Bill say "you won't say nothing else, you won't do that again." (6 RR 15). The factfinder is permitted to make rational inferences about whether a comment indicates a retaliatory intent. It may not, however, impermissibly speculate about one's intent by "theorizing or guessing about the possible meaning of [the] facts and evidence presented." *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013).

This statement is too vague to establish Bill was referencing Olda speaking with the police about the robbery. *See In re E.P.*, 257 S.W.3d 523, 526 (Tex. App.—Dallas 2008, no pet.)(finding retaliatory intent in the phrase "I'm gonna kick your ass for turning me in"). There is no evidence the "that" to which Bill was referring was Olda speaking with the police about the robbery. The statement could have referenced anything. Without something more to establish intent, this statement is insufficient to show Bill acted with retaliatory intent.

Considering the entire record, the evidence is insufficient to establish Bill had any motive for retaliating against Olda. The evidence fell far short of proving Bill had even robbed Juan in the first place, much less that Bill knew Olda implicated him in the robbery. The evidence was insufficient to establish Bill had any retaliatory intent in assaulting Olda.

## II. The Evidence is Insufficient to Support the Jury's Finding that Bill Used a Deadly Weapon

A "deadly weapon" is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PEN. CODE ANN. § 1.07(17)(B). "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* (46).

In order to establish an object constituted a deadly weapon, the State is not required to make any one, specific showing. It need not show the victim actually suffered serious bodily injury. *See Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008). There is no prerequisite for expert testimony explaining how the object could be a deadly weapon. *Denham v. State*, 574 S.W.2d 129, 131 (Tex. Crim. App. 1978) (en banc).

While no one showing is necessary, the State must nevertheless provide for the jury sufficient evidence upon which it could conclude a particular object constitutes a deadly weapon. Even in cases where the weapon is a knife, the State must introduce evidence in the form of either the actual knife, a victim's description of the knife or how it was used, evidence of the victim's injuries, or testimony about the knife's life-threatening capabilities before the jury can conclude the knife constituted a deadly weapon. *See Gibson v. State*, Nos. 07-13-

00412-CR, 07-13-00413-CR, 2014 WL 4197529, at *4 (Tex. App.—Amarillo Aug. 25, 2014, pet. ref'd) *citing Thomas v. State*, 821 S.W.2d 616, 619 (Tex. Crim. App. 1991) (en banc); *Villarreal v. State*, 255 S.W.3d 205, 209 (Tex. App.—Waco 2008, no pet.). No one factor is necessary, but there must be some combination of these or other relevant factors in order to establish an object was used as a deadly weapon.

Applying this analysis to the instant case, there are several different factors that may aid in the determination of whether the evidence was sufficient to support the jury's determination that a foot was used as a deadly weapon: the manner of its use or intended use; the nature or existence of inflicted wounds; and any testimony of the object's life-threatening capabilities. *See Villarreal*, 255 S.W.3d at 209; *Moore v. State*, No. 10-08-00211-CR, 2009 WL 1886450 (Tex. App.—Waco July 1, 2009, pet. ref'd)(applying *Villarreal* in a case where the deadly weapon was alleged to be a foot). Evidence about the relative size of the parties and the size and condition of the foot may also support the jury's determination. *See Turner v. State*, 664 S.W.2d 86, 90 n. 5 (Tex. Crim. App. 1983); *Hemphill*, 2004 WL 722247 at *4.

For example, in one case the defendant first knocked his wife to the floor and then kicked her in the lower back and chest. *Lane v. State*, 151 S.W.3d 188, 192 (Tex. Crim. App. 2004). As a result of the attack the wife lost consciousness and suffered a concussion. *Id.* Additional evidence from a paramedic, a nurse, and two police officers established the defendant's use of his hands and feet could cause seriously bodily injury. *Id.* Based on this combination of facts, the Court of Criminal Appeals found the evidence was sufficient to support the jury's deadly weapon finding.

In a similar case, the evidence was sufficient where a witness testified as to defendant's actions during the attack; a doctor testified such actions could cause serious bodily injury; and the victim suffered a concussion. *Powell v. State*, 939 S.W.2d 713, 718 (Tex. App.—El Paso 1997, no pet.). Again, the deadly weapon evidence was sufficient in a case where the victim suffered several broken bones in his face, an eyewitness testified about the specific manner in which the victim was attacked, and there was evidence the attack was so violent the attacker injured himself. *Carlson v. State*, 940 S.W.2d 776, 780 (Tex. App.—Austin 1997, pet. ref'd).

The jury may also consider the relative sizes of the attacker and victim. In yet another case where the evidence supported the deadly weapon finding, the victim was 5'2" and 105 pounds, and her attacker was 5'8" and 200 pounds. *Hemphill v. State*, No. 08-03-00054-CR, 2004 WL 722247, at *4 (Tex. App.—El Paso Apr. 1, 2004, pet. ref'd). The victim detailed the assault, wherein she sustained "severe" injuries and bruising. *Id.* A doctor and a police officer both testified the attacker's use of his hands and knees in the manner used against the victim, could be deadly. *Id.*; *See Clark v. State*, 886 S.W.2d 844, 845 (Tex. App.—Eastland 1994, no pet.)(evidence supported finding feet constituted deadly weapons where the defendant struck and kicked a two-year-old child in a manner capable of causing death).

Even with the wide latitude allowed to the State in establishing the deadly weapon enhancement, the State in the case at bar failed to provide evidence proving Bill used his foot as a deadly weapon. The evidence against Bill is a very pixilated recording showing one figure (Bill) striking another (Olda) with his foot. While such an action is undoubtly an assault (for which Bill took responsibility), there is nothing more indicating Bill's foot was a deadly weapon.

There was no evidence about any size difference between Bill and Olda. *See Villarreal*, 255 S.W.3d at 209. There was likewise nothing establishing whether Bill was barefoot or wearing boots. *See Turner*, 664 S.W.2d at 90 n. 5. While Bill admitted he kicked Olda in the face, there was no evidence indicating he did so with any great measure of force. There was no evidence establishing Bill was particularly strong or heavy and that he was otherwise capable of utilizing his foot as a deadly weapon.

There was also no evidence of severe injuries. Olda only suffered a busted lip and a two centimeter cut. There was no evidence of a concussion. (State's Ex. 23, pg. 12). There were no fractures. (*Id.* 6). Olda did stay in the hospital for approximately five days, but there was absolutely no evidence indicting he had to stay for treatment of the busted lip and cut caused by Bill. To the contrary, the medical records indicated Olda had several underlying problems (independent of Bill's assault) requiring medical treatment. None of those conditions, however, were linked to Bill. Finally, there was no testimony from either a police officer or a medical expert that evaluated Bill's attack and concluded Bill's foot constituted a deadly weapon.

The State does not have to show Olda actually suffered a severe injury or provide expert testimony or show what kind of footwear Bill had on at the time of the attack or any one of the factors detailed above. No one factor is required, but there is not even a combination of factors upon which the jury's finding can stand. The State has to provide some form of evidence establishing something beyond mere assault with a foot. A foot is not per se a deadly weapon. The State cannot simply allege Bill used his foot to kick Olda and present no additional evidence establishing how his foot (in addition to being an instrument of assault) was utilized as a deadly weapon.

The State only proved Bill used his foot to kick Olda. Bill admitted as much himself. It did not, however, present any additional evidence establishing *how* that use entered the deadly weapon realm. The record evidence is insufficient to establish Bill used his foot as a deadly weapon.

## III. PRAYER

Appellant Bill Collins, prays this Court would find the evidence supporting the jury's verdict as to the retaliation and deadly weapon issues was insufficient. Accordingly, Mr. Collins asks the Court reverse the Judgment and remand the case for additional proceedings.

Respectfully submitted,
Law Office of Allison Clayton
P.O. Box 64752
Lubbock, Texas 79464-4752
Phone No.: (806) 773-6889
Fax No.: (888) 688-4515

By:   /s/ Allison Clayton
Allison Clayton
State Bar No. 24059587
Allison@AllisonClaytonLaw.com

## CERTIFICATE OF SERVICE

I certify that on November 9, 2015, a copy of this brief was served on opposing counsel, Jeffrey S. Ford of the Lubbock County District Attorney's Office, via electronic mail.

/s/ Allison Clayton
Allison Clayton

## CERTIFICATE OF COMPLIANCE

I certify the foregoing Brief on the Merits complies with Rule 9.4(i)(2)(A) of the Texas Rules of Appellate Procedure. The brief, excluding those portions detailed in Rule 9.4(i) of the Texas Rules of Appellate Procedure, is 4,867 words long. I have relied upon the word count function of Microsoft Word, which is the computer program used to prepare this document, in making this representation.

/s/ Allison Clayton
Allison Clayton